# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS DIVISION

| | | |
|---|---|---|
| **TRIPLE R RANCH, LLC and** | § | |
| **ERIC HEDRICK,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CA No.  2:18-cv-109 (Bailey)** |
| **vs.** | § | |
| | § | |
| **PILGRIM'S PRIDE CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION TO DISMISS</u>

Peter G. Zurbuch
WV State Bar # 5765

**BUSCH, ZURBUCH & THOMPSON, PLLC**
P.O. Box 1819
Elkins, WV 26241
Tel: (304) 636-3560
Fax: (304) 636-2290
Email: pzurbuch@bztlaw.com

Clayton E. Bailey
(Admitted *Pro Hac Vice*)
Benjamin L. Stewart
(Admitted *Pro Hac Vice*)

**BAILEY BRAUER PLLC**
Campbell Centre I
8350 N. Central Expressway, Suite 206
Dallas, Texas 75206
Telephone:  (214) 360-7433
Facsimile:  (214) 360-7435
Email:  cbailey@baileybrauer.com
           bstewart@baileybrauer.com

*ATTORNEYS FOR DEFENDANT*
*PILGRIM'S PRIDE CORPORATION*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES .................................................................................................... ii

I.      Preliminary statement ................................................................................................ 1

II.     The Complaint's allegations ...................................................................................... 2

        A.      Plaintiffs, Pilgrim's, and the BPA............................................................... 2

        B.      Plaintiff Hedrick quickly becomes dissatisfied with Pilgrim's............................ 4

        C.      Triple R terminates the 2012 BPA on October 3, 2016 and instructs
                Pilgrim's not to deliver any more chicks. ............................................... 5

        D.      More than two-years *after* terminating Triple R's BPA, Plaintiffs file this
                lawsuit complaining about events allegedly occurring many years
                beforehand........................................................................................... 6

III.    Argument and Authority ............................................................................................ 8

        A.      Standard of review under Federal Rule of Civil Procedure 12(b)(6).................... 8

        B.      Plaintiff Hedrick lacks standing to sue Pilgrim's. ........................................... 9

        C.      Plaintiffs' contract claim fails because Plaintiffs terminated the 2012 BPA....... 10

        D.      Plaintiffs' good faith and fair dealing claim is not viable................................. 11

        E.      Plaintiffs' AFPA, fraud, and negligent, willful and reckless
                misrepresentation claims are time barred. .......................................... 12

        F.      With respect to any alleged false representations falling within the
                limitations period, Plaintiffs' negligent misrepresentation and fraud claims
                are still barred. ................................................................................... 13

        G.      The Court should dismiss Plaintiffs' PSA § 192(a) and (b) allegations. ............. 15

                1.      Recent developments since the Court's October 26, 2015 decision....... 16

                2.      In light of recent developments, Plaintiffs' PSA § 192(a) and (b)
                        claims fail.............................................................................. 18

                3.      Under any interpretation of PSA § 192(a) and (b), the claims are
                        barred .................................................................................. 21

                4.      Under any interpretation of PSA § 192(a) and (b), Plaintiffs cannot
                        recover attorney fees under the PSA...................................... 21 2

IV.     Conclusion .............................................................................................................. 22

        CERTIFICATE OF SERVICE ...................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Adams v. Pilgrim's Pride Corp.*,
No. 2:09-cv-397, 2011 WL 5330301 (E.D. Tex. Sept. 30, 2011), *rev'd*,
*Agerton v. Pilgrim's Pride Corp.*, 728 F.3d 457 (5th Cir. 2013)...........................................18

*Am. Needle, Inc. v. NFL,*
560 U.S. 183 (2010)........................................................................................................19

*Armour & Co. v. United States*,
402 F.2d 712 (7th Cir. 1968) ........................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................8, 9, 20

*Barber v. Magnum Land Servs., LLC*,
No. 1:13CV113, 2014 WL 5148575 (N.D. W. Va. Oct. 14, 2014) ........................13

*Baron Fin. Corp. v. Natanzon*,
471 F. Supp. 2d 535 (D. Md. 2006) .............................................................................10

*Been v. O.K. Indus., Inc.*,
495 F.3d 1217 (10th Cir. 2007) ...................................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................8, 9

*Bluestone Coal Corp. v. CNX Land Res., Inc.*,
No. 1:107-0549, 2007 WL 6641647 (S.D. W. Va. 2007).......................................14

*City of Clinton, Ar. v. Pilgrim's Pride Corp.*,
653 F. Supp. 2d 669 (N.D. Tex. 2009), *aff'd on other grounds,* 632 F.3d 148
(5th Cir. 2010).................................................................................................................22

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984).........................................................................................................21

*DeJong Packing Co. v. U.S. Dep't of Agric.*,
618 F.2d 1329 (9th Cir. 1980) ......................................................................................18

*Dunn v. Rockwell*,
225 W. Va. 43, 689 S.E.2d 255 (W. Va. 2009) .......................................................13

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ........................................................................................19

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*,
    213 F.3d 175 (4th Cir. 2000) ...........................................................................9

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*,
    180 F. Supp. 2d 678 (D. Md. 2001) ................................................................9

*Gordon v. Lewiston Hosp.*,
    423 F.3d 184 (3d Cir. 2005)...........................................................................19

*Hensel Phelps Constr. Co. v. Davis & Burton Contractors, Inc.*,
    CIV.A. 3:11-1020, 2013 WL 623071 (S.D. W. Va. Feb. 19, 2013).......................13

*Highmark W. Va., Inc. v. Jamie*,
    221 W.Va. 487, 655 S.E.2d 509 (W. Va. 2007) ...............................................11

*IBP, Inc. v. Glickman*,
    187 F.3d 974 (8th Cir. 1999) ........................................................................18

*Jackson v. Swift Eckrich, Inc.*,
    53 F.3d 1452 (8th Cir. 1995) ........................................................................21

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984).................................................................................19, 20

*JES Props., Inc. v. USA Equestrian, Inc.*,
    253 F. Supp. 2d 1273 (M.D. Fla. 2003) ........................................................19

*Kidd v. Mull*,
    215 W. Va. 151, 595 S.E.2d 308 (W. Va. 2004) ..............................................14

*Liberty Mut. Ins. Co. v. Bankers Trust Co.*,
    768 F. Supp. 70 (S.D.N.Y. 1991) ..................................................................22

*London v. Fieldale Farms Corp.*,
    410 F.3d 1295 (11th Cir. 2005), *cert. denied*, 546 U.S. 1034 (2005)................16, 20

*M&M Poultry, Inc. v. Pilgrim's Pride Corp.*,
    281 F. Supp. 3d 610 (N.D. W. Va. 2017) .....................................................4, 15

*Martin v. Mountain St. Univ., Inc.*,
    No. 5:12-03937, 2014 WL 1333251 (S.D. W. Va. Mar. 31, 2014) .........................14

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
    710 F.3d 551 (4th Cir. 2013) ........................................................................14

*McCoy v. S. Energy Homes, Inc.*,
    No. 1:09-1271, 2012 WL 1409533 (S.D. W. Va. Apr. 23, 2012)...........................15

*Menasha Corp. v. News Am. Mktg. In-Store*,
   354 F.3d 661 (7th Cir. 2004) .......................................................................19

*Mich. Canners and Freezers Ass'n, Inc. v. Agric. Mktg. and Bargaining Bd.*,
   467 U.S. 461 (1984)....................................................................................12

*NCAA v. Bd. of Regents*,
   468 U.S. 85 (1984)......................................................................................19

*Org. of Competitive Mrkts v. U.S. Dep't of Agric.*,
   912 F.3d 455 (8th Cir. 2018) ................................................................16, 17

*Petty v. Warren*,
   110 S.E. 826 (W. Va. 1922).........................................................................10

*In re Pilgrim's Pride Corp.*,
   728 F.3d 457 (5th Cir. 2013) ................................................................18, 19

*Powell v. Bank of Am., N.A.*,
   842 F. Supp. 2d 966 (S.D. W. Va. 2012) ...............................................10, 11

*RCM Supply Co., Inc. v. Hunter Douglas, Inc.*,
   686 F.2d 1074 (4th Cir. 1982) .....................................................................19

*Runyon v. McCrary*,
   427 U.S. 160 (1976).....................................................................................22

*Sanderson v. Culligan Int'l Co.*,
   415 F.3d 620 (7th Cir. 2005) .......................................................................19

*SCFS ILC, Inc. v. Visa USA, Inc.*,
   36 F.3d 958 (10th Cir. 1994) .......................................................................20

*Terry v. Tyson Farms, Inc.*,
   604 F.3d 272 (6th Cir. 2010), *cert denied*, 131 S.Ct. 1044 (2011).........................16

*Tinsley v. Onewest Bank, FSB*,
   4 F. Supp. 3d 805 (S.D. W. Va. 2014)..............................................................9, 11

*United States v. E.I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956).....................................................................................19

*Varner v. Peterson Farms*,
   371 F.3d 1011 (8th Cir. 2004) .....................................................................21

*Weber v. Wells Fargo Bank, N.A.*,
   No. 3-13-CB-158, 2014 WL 198661 (N.D. W. Va. Jan. 15, 2014).........................11

*Wheeler v. Pilgrim's Pride Corp.*,
  591 F.3d 355 (5th Cir. 2009) .......................................................................16, 18

*Williams v. Branker*,
  462 F. App'x 348 (4th Cir. 2012) ...........................................................................9

*Witthohn v. Fed. Ins. Co.*,
  165 F. App'x 395 (4th Cir. 2006) ...........................................................................9

## STATUTES

7 U.S.C. § 192(a) ..................................................................................... *passim*

7 U.S.C. § 192(b) ..................................................................................... *passim*

7 U.S.C. § 209(a) ................................................................................................22

7 U.S.C. § 2303(a) ..............................................................................................12

7 U.S.C. § 2303(c) ..............................................................................................12

7 U.S.C. § 2305(c) ..............................................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ......................................................................................14, 15

Fed. R. Civ. P. 12(b)(6) .................................................................................8, 20

9 C.F.R. § 201.210 .............................................................................................17

9 C.F.R. § 201.211 .............................................................................................17

9 C.F.R. § 201.3(c) ............................................................................................17

28 U.S.C. § 1292(b) ...........................................................................................18

82 Fed. Reg. 48,594 (Oct. 18, 2017) ................................................................17

82 Fed. Reg. 48,603 (Oct. 18, 2017) ................................................................17

82 Fed. Reg. 48596 (Oct. 18, 2017) .................................................................17

Consolidated and Further Continuing Appropriations Act, 2013, Pub. L. 113-6,
  127 Stat. 198, § 742 (Mar. 26, 2013) ..............................................................16

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. 113-235,
  128 Stat. 2167, § 731 (Dec. 16, 2014) ............................................................16

Implementation of Regulations Required Under Title XI of the Food,
    Conservation and Energy Act of 2008; Conduct in Violation of the Act, 75
    Fed. Reg. 35338 *et seq.* (proposed June 22, 2010) ................................................................17

W. Va. Code § 31B-2-201 ........................................................................................................9

W. Va. Code § 55-2-12 ..........................................................................................................13

AM JUR.2d Fraud & Deceit § 264 (2012) ..............................................................................15

C.J.S. Fraud § 55 (2012) ........................................................................................................15

F. Easterbrook, *The Limits of* Antitrust, 63 Tex. L. Rev. 1 (1984) ...............................................19

Defendant Pilgrim's Pride Corporation ("Pilgrim's") files its Memorandum of Law in Support of its Motion to Dismiss, and states as follows:

## I.     PRELIMINARY STATEMENT

This is a lawsuit filed by a former Pilgrim's contract broiler grower, Eric Hedrick, and his poultry farm, known as Triple R Ranch, LLC ("Triple R," and with Plaintiff Hedrick collectively referred to as "Plaintiffs"), claiming Pilgrim's wrongfully terminated their Broiler Production Agreement ("BPA), committed bad faith, made negligent and fraudulent misrepresentations to Plaintiffs, and violated both the Agricultural Fair Practices Act ("AFPA") and the Packers and Stockyards Act, 1921 ("PSA").

As will be demonstrated below, each of Plaintiffs' six causes of action should be dismissed.   First, Plaintiff Hedrick lacks standing to bring a private right of action against Pilgrim's based on any of the Complaint's six causes of action because Pilgrim's contracted with Plaintiff Triple R, as opposed to Plaintiff Hedrick, and the complained of acts relate to Plaintiff Triple R's broiler raising operation and thus the purported resulting damages were allegedly incurred by Plaintiff Triple R, not Plaintiff Hedrick personally.

However, even if Plaintiff Hedrick had standing to sue Pilgrim's based on the allegations in the Complaint, which he does not, Plaintiffs' breach of contract action alleging Pilgrim's "unlawfully terminated the poultry growing arrangement" is precluded because the contemporaneous correspondence between the parties show Plaintiffs, as opposed to Pilgrim's, terminated the BPA on October 3, 2016, and instructed Pilgrim's not to deliver any more chicks to Triple R.

Similarly, Plaintiffs' good faith and fair dealing claim fails because it is not a stand-alone claim and it cannot be predicated on a breach of contract claim because Plaintiffs' breach of contract claim fails as a matter of law.

Next, Plaintiffs' AFPA, negligent misrepresentation, and fraud claims fail because they are barred by the applicable two-year statute of limitations.  And to the extent Plaintiffs allege Pilgrim's made negligent or intentionally false representations within the limitations period, Plaintiffs' claims are still barred for, among other things, failure to plead them with particularity and for lack of justifiable reliance.

Finally, Plaintiffs' PSA claims are precluded because they fail to show Pilgrim's unilateral conduct harmed competition.  But even if the Court concludes Plaintiffs are not required to show harm to competition, these claims are still precluded because they are time barred, were released under Triple R's BPA, and the allegations do not give rise to a claim under the statute.  Finally, Plaintiffs cannot recover their fees under the PSA.

## II.     THE COMPLAINT'S ALLEGATIONS

### A.     Plaintiffs, Pilgrim's, and the BPA.

Sometime before 2007, Plaintiff Eric Hedrick and his wife acquired a farm comprised of 13 poultry houses located in Pendleton County, West Virginia.  (Complaint ("Compl.") ¶ 1.) The Hedricks operated the farm as a limited liability company known as Triple R.  (*Id.*)

On the other hand, Pilgrim's "operates a poultry processing plant in Moorefield, West Virginia and utilizes poultry growing arrangements whereby poultry growers care for poultry pursuant to [Pilgrim's] instructions, . . ."  (*Id.* ¶ 32.)

Sometime in 2007, Triple R started providing broiler grow-out services for Pilgrim's under the first of three BPAs.  (Compl. ¶¶ 1, 34.)  The first and second BPAs were signed on

September 10, 2007 and May 28, 2009, respectively.   (*Id.* 34, 44.)   Plaintiffs allege the most recent BPA was signed on February 24, 2012 ("2012 BPA").[1]   (*Id.* ¶ 63.)

The 2012 BPA was executed by Plaintiff Hedrick solely on behalf of Triple R, not Plaintiff Hedrick personally.[2]   (*See* Ex. A attached hereto.)   The 2012 BPA's term was flock to flock, and either Triple R or Pilgrim's could terminate the 2012 BPA "without any need for cause provided that written notice is given at least 90 days prior to the termination of" the BPA. (*Id.* §§ C & D.)   Under the 2012 BPA, Pilgrim's delivers the chicks, feed, and medicine for raising the poultry and provides technical services.   (*Id.* §§ F.1, F.2, & F.11.)   Additionally, upon the poultry reaching a certain size as determined by Pilgrim's, the poultry are removed by Pilgrim's from Triple R for processing.   (*Id.* §§ F.3 & F.4.)   On the other hand, Triple R was responsible for, among other things, providing the housing, equipment, labor, litter, and utilities necessary for raising the poultry.   (*Id.* § G.1, G.3, & F.1.)   Triple R also agreed to follow Pilgrim's "written and verbal management recommendations, including, but not limited to, watering, feeding, brooding, sanitation, litter, vaccination, medication, house environment, lighting, pest control and biosecurity."   (*Id.* § G.2.)

The parties agreed Pilgrim's would pay Triple R for its services under what Plaintiffs characterize as the "'tournament system.'"   (Compl. ¶ 10.)   The formula for this so-called "'tournament system'" is detailed in Exhibit A to the 2012 BPA.   (Ex. A at 6 ("Exhibit A - Broiler Production Payment Schedule").)   The formula states Triple R would be ranked against

---

[1] Because Plaintiffs refer to and describe the 2012 BPA in their Complaint but fail to attach a copy as an exhibit, the 2012 BPA is attached hereto as Exhibit A.  The 2012 BPA shows that the effective date was actually March 16, 2012, which is the date the BPA was signed by Pilgrim's Operations Manager, Michael Ellington.  (Ex. A at 1, 5.)  Hedrick signed the 2012 BPA on behalf of Triple R on March 12, 2012.  (*Id.* at 5.)

[2] On pages 1 and 5 of the 2012 BPA, Hedrick lists the "Independent Grower" and "Independent Grower Name" as "Triple R Ranch LLC."  (Ex. A at 1, 5.)

other Pilgrim's contract broiler growers who settled flocks of broilers the same week as Triple R. (*Id.*)   Under the formula, Pilgrim's set a base pay of 5.55 cents per pound that it would pay broiler growers.  (*Id.*)  For every flock of broilers that settles in a week, the independent growers are ranked against each other using Pilgrim's "weighted average formula cost," which calculates the standard cost of feed, chicks, and medication.  (*Id.*)  Pilgrim's paid contract broiler growers who perform better than the weighted average formula cost more than the 5.55 cents per pound base pay.  (*Id.*)  Conversely, Pilgrim's paid contract broiler growers who performed worse than the weighted average formula cost less than the 5.55 cents per pound base pay.[3]

Plaintiffs admit each of Triple R's BPAs used the "'tournament system'" to calculate pay. (*Id.* ¶¶ 10-12, 18, 21-25).  Plaintiffs also concede Pilgrim's "'tournament system'" is not unique because at least four other "giant poultry" companies "use the tournament system to pay growers they have placed under contract, . . ."[4]  (*Id.* ¶ 15.)

**B.   Plaintiff Hedrick quickly becomes dissatisfied with Pilgrim's.**

Although Plaintiffs allege their "performance . . . as a grower for [Pilgrim's] was consistently average or above average" "for the first few years" (*id.* ¶ 69), Mr. Hedrick nevertheless became dissatisfied quickly with Triple R's poultry grower arrangement with Pilgrim's.  Consequently, in "September, 2007, Plaintiff Hedrick began gathering with other farmers growing chickens for [Pilgrim's] to share their complaints and frustrations from their dealings with [Pilgrim's]."  (*Id.* ¶ 53.)  The following year, Plaintiff Hedrick "joined the newly re-organized Contract Poultry Growers Association of the Virginias" and became a director in

---

[3] Pilgrim's formula for paying its contract broiler growers is discussed in substantial detail in *M&M Poultry, Inc. v. Pilgrim's Pride Corporation,* 281 F. Supp. 3d 610, 612 (N.D. W. Va. 2017).

[4] In *M&M Poultry, Inc.*, the Court determined that "[t]he tournament system is not novel or deceptive. This system has been used in the poultry industry for over forty years, and is still the standard system in the poultry industry." 281 F. Supp. 3d at 612, 621.

June 2008.  (*Id.* ¶ 54.)  Thereafter, in December 2010, Plaintiff Hedrick "spoke to a meeting convoked by the United States Government, specifically the Department of Justice, to discuss problems and abuses with integration in the chicken growing industry."  (*Id.* ¶ 56.)

**C.    Triple R terminates the 2012 BPA on October 3, 2016 and instructs Pilgrim's not to deliver any more chicks.**

Although Plaintiffs allege Pilgrim's "unlawfully terminated the poultry growing arrangement," "stopped placing chicks on Plaintiff's [sic] farm," and "continued to deny placement of chicks on Hedrick's farm" (*Id.* ¶¶ 18, 66, 67), they fail to provide the Court with the termination documents.  (*See generally* Compl.)  This omission was intentional.  If Plaintiffs attached the correspondence involving the termination, Plaintiffs would have to acknowledge ***Triple R terminated the 2012 BPA and instructed Pilgrim's not to deliver chicks to Triple R.*** Specifically, on October 3, 2016, Plaintiff Hedrick sent the following email to Pilgrim's:

> **From:** Eric Hedrick [mailto:ekhedrick@yahoo.com]
> **Sent:** Monday, October 03, 2016 12:28 PM
> **To:** Umstot, Peyton; Cullers, Tim
> **Subject:** Placement
>
> This email is to inform you that we will not be taking any more chicks after this flock we have now is finished.  We are closing our doors.
>
> Please respond so we know you have received this.
>
> Eric and Rachel Hedrick
> Triple R Ranch LLC

(*See* Ex. B attached hereto.)

The following day, October 4, 2016, Pilgrim's issued an email to Plaintiff Hedrick confirming receipt of Plaintiff Hedrick's written notice of termination and agreeing to Plaintiff Hedrick's request "to no longer place chicks back on Triple R Farm after the current flock is removed for processing."

| From: | Umstot, Peyton |
|---|---|
| Sent: | Tuesday, October 04, 2016 3:26 PM |
| To: | 'Eric Hedrick'; Cullers, Tim |
| Subject: | RE: Placement |

Eric,
This email is to confirm that Pilgrim's Moorefield Complex received your email yesterday requesting to terminate the broiler production agreement. The complex also confirms receipt of your request that Pilgrim's no longer place chicks back on Triple R Farm after the current flock is removed for processing. Your letter has been tendered to the appropriate individual. In the meantime , and per your request , Pilgrims will not slot your farm to receive chicks in the future.

Peyton Umstot
Pilgrims

**From:** Eric Hedrick [mailto:ekhedrick@yahoo.com]
**Sent:** Monday, October 03, 2016 12:28 PM
**To:** Umstot, Peyton; Cullers, Tim
**Subject:** Placement

This email is to inform you that we will not be taking any more chicks after this flock we have now is finished. We are closing our doors.

Please respond so we know you have received this.

Eric and Rachel Hedrick
Triple R Ranch LLC

(Ex. C attached hereto.)

That same day, Pilgrim's also issued a letter to Triple R accepting its decision to terminate the 2012 BPA and agreeing to waive Pilgrim's right to 90-days' notice of termination. (Ex. D attached hereto.)  Pilgrim's also agreed not to deliver more chicks to Triple R per Triple R's instructions.  (*Id.*)

**D.    More than two-years *after* terminating Triple R's BPA, Plaintiffs file this lawsuit complaining about events allegedly occurring many years beforehand.**

Plaintiffs delayed filing this lawsuit until October 25, 2018—two years and twenty-two days after Triple R terminated the 2012 BPA.  (*See* Compl.)  In the Complaint, Plaintiffs spend numerous pages bemoaning the "'tournament system'" they operated under since they signed their first BPA in 2007.  (*See e.g.*, Compl, ¶¶ 10-15, 18-31.)

Plaintiffs also allege that unidentified Pilgrim's representatives purportedly made vague and ambiguous misrepresentations at some unidentified place several years ago that contradict

the clear and express terms of the BPAs.  (Compl. ¶ 83 (Pilgrim's "in late 2006 represented to Hedrick that as long as he grew good birds, he would continue to receive placements of baby chicks from" Pilgrim's); ¶¶ 1 & 36 (alleging although Plaintiffs signed a three-year term BPA in January 2007, Pilgrim's "service technician informed Plaintiffs" that they "would be required to upgrade the heating systems in some of the broiler houses" or Pilgrim's "would not deliver to chicks to these houses"); ¶ 34 (In "late 2007" Pilgrim's allegedly "promised Hedrick that as long as he grew a good bird, he would continue to receive placements of baby chicks from [Pilgrim's]"); ¶¶ 44-45 ("The 2009 BPA falsely and misleadingly referred to Triple R as an 'independent grower.'"); ¶¶ 49-51 (In "February 2016," Pilgrim's allegedly provided Mr. Hedrick with an "Estimated Cash Flow" that Plaintiffs used to calculate their anticipated total net revenue).)

Plaintiffs also allege Pilgrim's engaged in "reprisals" against Plaintiffs after Plaintiff Hedrick spoke in December 2010 at a "meeting convoked by the United States Government." (*Id.* ¶ 56.)  The Complaint fails to show how Pilgrim's was aware of Plaintiff Hedrick's speaking engagement or when the reprisals occurred.  (*See generally* Compl.).  Nevertheless, Plaintiffs vaguely allege that "[d]uring the course of their relationship" or "on at least one occasion" Pilgrim's provided poor quality chicks or feed to Triple R, failed to provide medication for the chicks, or "took certain actions that resulted in the inaccurate and deceptive weighing of chickens."  (*Id.* ¶ 57-60.)  Plaintiffs, however, acknowledge that by April 2016, Triple R experienced "the best ranking in the settlement (Tournament) it had received in a long time." (*Id.* ¶ 69.)

Finally, even though Triple R terminated the 2012 BPA on October 3, 2016, and instructed Pilgrim's not to deliver chicks to Triple R, Plaintiffs allege that some unidentified

Pilgrim's representative told Plaintiffs they "would be getting chickens placed on [Triple R's] farm in a few days." (*Id.* ¶ 86.) Plaintiffs assert Plaintiff Hedrick "knew that chicks would be placed on his farm in the second week of November 2016" in light of "Pilgrims' [sic] normal procedure," and "Plaintiffs reasonably relied on the past statements of Pilgrim's and did not know that the representations were false until [Pilgrim's] personnel informed Hedrick that they would not be placing chicks on his farm and subsequently failed to provide chickens in second week [sic] of November, 2016." (*Id.* ¶¶ 87 & 88.)

### III.    ARGUMENT AND AUTHORITY

**A.    Standard of review under Federal Rule of Civil Procedure 12(b)(6).**

To avoid dismissal under Rule 12(b)(6), Plaintiffs' Complaint must allege "enough facts to state a claim to relief that is plausible on its face" in order to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

Although "a court must accept as true all of the allegations contained in a complaint," that principle is "inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Thus, "[t]hreadbare recitals of the element of a cause of action, supported by mere conclusory statements," are an insufficient basis to state a claim. *Iqbal*, 129 S.Ct. at 1949. For

this reason, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 555).

Additionally, the Court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000).

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012).   However, the Court may rely on extrinsic evidence if the documents are central to Plaintiffs' claim or are sufficiently referred to in the Complaint.   *Witthohn v. Fed. Ins. Co.*, 165 F. App'x 395, 396 (4th Cir. 2006). **"When a document is properly considered in the context of a motion to dismiss and it conflicts with the bare allegations of the complaint, the document prevails."**   *Tinsley v. Onewest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (emphasis added) (citing *Fare Deals Ltd. v. World Choice Travel.Com, Inc*., 180 F. Supp. 2d 678, 683 (D. Md. 2001)).

**B.       Plaintiff Hedrick lacks standing to sue Pilgrim's.**

The Court should dismiss all of Plaintiff Hedrick's causes of action filed in his individual capacity against Pilgrim's because he lacks standing to sue Pilgrim's.   The first paragraph of the Complaint expressly alleges Plaintiff Hedrick and his wife operate the poultry farm as a West Virginia limited liability company.   Further, the 2012 BPA shows that Triple R, as opposed to Plaintiff Hedrick, is the party in privity with Pilgrim's.   (*See* Ex. A.)

West Virginia law recognizes that a "limited liability company is a legal entity distinct from its members."   W. Va. Code § 31B-2-201.   Accordingly, each of Plaintiff Hedricks' causes of action pleaded against Pilgrim's are barred.   For instance, Plaintiff Hedrick has no claim

against Pilgrim's for breach of contract because he is not in privity with Pilgrim's. *Petty v. Warren*, 110 S.E. 826 (W. Va. 1922). And because he lacks privity to maintain his breach of contract claim, he has no claim for bad faith. *See Powell v. Bank of Am.*, *N.A.,* 842 F. Supp. 2d 966, 982 (S.D. W. Va. 2012).

Similarly, his claims under the AFPA and PSA, as well as his negligent misrepresentation and fraud claims, lack merit because they pertain to Plaintiff Triple R's poultry operation (e.g., purported "reprisals" in the form of providing bad chicks, feed, medication and inaccurately and deceptively weighing chickens (Compl. ¶¶ 56-61, 69-74, 77-80)), and thus any alleged damages were necessarily incurred by Plaintiff Triple R, not Plaintiff Hedrick personally. Accordingly, Plaintiff Hedrick lacks standing in his individual capacity to bring these claims for damages purportedly suffered by the limited liability company. *See Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 547 (D. Md. 2006) (collecting cases form the Fourth Circuit and holding that a member lacks standing to bring an unfair competition claim for damages to the limited liability company).

For all these reasons, Plaintiff Hedrick's claims against Pilgrim's should be dismissed with prejudice.

**C.    Plaintiffs' contract claim fails because Plaintiffs terminated the 2012 BPA.**

Plaintiffs' breach of contract claim is barred because Plaintiffs, not Pilgrim's, terminated the 2012 BPA. In their Complaint, Plaintiffs' allege Pilgrim's "unlawfully terminated the poultry growing arrangement," and "Defendants [sic] deliberately and maliciously refused to honor the requirements of first paragraph [sic] section F of its BPA to continue to place birds on the Plaintiff's [sic] farm." (Compl. ¶¶ 18, 93.)

Plaintiffs' breach of contract claim is groundless because Triple R terminated the 2012 BPA by written notice dated October 3, 2016.  (*See* Ex. B.)  Triple R also instructed Pilgrim's not to deliver a new batch of chicks because Triple R "will not be taking any more chicks after this flock we have now is finished.  We are closing our doors." (*Id.*)  The day after receiving Plaintiffs' written termination notice, Pilgrim's responded by issuing both an email and a letter acknowledging receipt of the termination notice, accepting Plaintiffs' decision to terminate the 2012 BPA, and waiving Pilgrim's right to 90-days' notice of termination.  (*See* Exs. C & D.) Pilgrim's also agreed not to deliver any further chicks to Plaintiffs in light of their representation that Triple R was "closing [its] doors." (*Id.*)

Because the facts demonstrated by the written correspondence prevail over the Complaint's bare allegations, the parties' written correspondence showing that Triple R terminated the 2012 BPA rather than Pilgrim's controls, and Plaintiffs' breach of contract claim is barred as a matter of law.  *Tinsley*, 4 F. Supp. 3d at 819.

**D.      Plaintiffs' good faith and fair dealing claim is not viable.**

The Court should also dismiss Plaintiffs' good faith and fair dealing claim because it is not a stand-alone cause of action.  *Highmark W. Va., Inc. v. Jamie,* 221 W.Va. 487, 655 S.E.2d 509, 514 (W. Va. 2007); *Weber v. Wells Fargo Bank, N.A.,* No. 3-13-CB-158, 2014 WL 198661, at * 4 (N.D. W. Va. Jan. 15, 2014) ("a stand-alone bad faith claim . . . is not recognized in West Virginia").  Additionally, to the extent Plaintiffs seek to predicate their bad faith claim based on their breach of contract claim, their attempt fails because, as shown in § III.C of this Memorandum, Plaintiffs' breach of contract claim is not viable.  *See Powell*, 842 F. Supp. 2d at 982.  Hence, Plaintiffs' bad faith claim is barred.

**E.     Plaintiffs' AFPA, fraud, and negligent, willful and reckless misrepresentation claims are time barred.**

The Court should dismiss Plaintiffs' AFPA, fraud, and negligent, willful and reckless misrepresentation claims because they are barred by the statute of limitations.

Congress enacted the AFPA in 1968 to "protect[] the right of farmers and other producers of agricultural commodities to join cooperative associations through which to market their products," and "to rectify a perceived imbalance in bargaining position between producers and processors of such products." *Mich. Canners and Freezers Ass'n, Inc. v. Agric. Mktg. and Bargaining Bd.*, 467 U.S. 461, 464 (1984).   The AFPA makes it unlawful for handlers to knowingly "coerce any producer in the exercise of his right to . . . belong to . . . an association of producers," 7 U.S.C. § 2303(a), or to knowingly "coerce or intimidate any producer to . . . cancel, or terminate a membership in or contract with an association of producers[.]"  7 U.S.C. § 2303(c).  The statute of limitations for filing a claim based on a violation of AFPA is two years.  7 U.S.C. § 2305(c).

Here, Plaintiffs filed their lawsuit on October 25, 2018.   (*See generally* Compl.) Accordingly, the statute's two-year limitations period precludes any conduct occurring before October 25, 2016.  Plaintiffs, however, fail to plead any facts showing a violation of the AFPA occurring after October 25, 2016.  Indeed, Plaintiffs terminated their 2012 BPA on October 3, 2016, and instructed Pilgrim's not to deliver additional chicks to Triple R.  (*Compare* Exs. B & C *with* Compl ¶ 80.)  Moreover, Plaintiffs contend Pilgrim's committed violations of the AFPA in response to Plaintiff Hedrick's "membership in the CPGAVA" dating as far back as 2008 and his speaking engagement on December 2010 (Compl. ¶¶ 56-62, 78-80), but acknowledge Triple R was back to experiencing "the best ranking in the settlement (Tournament) it had received in a

long time" by April 2016. (*Id.* ¶ 69.) Accordingly, Plaintiffs' purported claims under AFPA accrued more than two years before Plaintiffs filed the Complaint on October 25, 2018.

Similarly, claims for negligent misrepresentation and fraud are governed by a limitations period of two years. W. Va. Code § 55-2-12 (1959); *Hensel Phelps Constr. Co. v. Davis & Burton Contractors, Inc.*, CIV.A. 3:11-1020, 2013 WL 623071, at * 3 (S.D. W. Va. Feb. 19, 2013); *Dunn v. Rockwell*, 225 W. Va. 43, 56, 689 S.E.2d 255, 268 (W. Va. 2009). Consequently, to the extent Plaintiffs rely on purported negligent or fraudulent misrepresentations in 2006, 2007, 2009 or early 2016 (Compl. ¶¶ 1, 34, 36, 44-45, 49-51, 83), these claims are barred by limitations as a matter of law.[5]

Precluding Plaintiffs' state law negligent misrepresentation and fraud claims based on limitations is appropriate given the nature of the purported representations, Pilgrim's alleged conduct thereafter, and Triple R's decision to terminate the 2012 BPA on October 3, 2016. Under West Virginia's objective test, Plaintiffs should have known about these potential claims well before the Complaint was filed on October 25, 2018. *See Barber v. Magnum Land Servs., LLC*, No. 1:13CV113, 2014 WL 5148575, at * 7 (N.D. W. Va. Oct. 14, 2014).

**F.    With respect to any alleged false representations falling within the limitations period, Plaintiffs' negligent misrepresentation and fraud claims are still barred.**

The only alleged false representations potentially falling within the two-year limitations period for a negligent or fraudulent misrepresentation claim are found in paragraphs 86 and 103, which state as follows:

---

[5] Any purported causes of action that accrued before March 16, 2012 are also barred by the 2012 BPA. (*See* Ex. A, § H.10 ("The Independent Grower and Company hereby release and extinguish all claims that they may have against each other under any previous Broiler Production Agreement and all other previous agreements governing the relationship between Independent Grower and Company.").)

86.     During the latter part of October, 2016, PPC picked up the flock of broilers on the Hedrick farm for processing and, in conformance with the BPA and Hedrick [sic] began preparing his poultry houses for the next flock.  He was told by PPC personnel that he would be getting chicks placed on his farm in a few days.

* * *

103.     PPC represented to Hedrick that they would not place birds on Plaintiffs' farm because Hedrick had grower management problems.  PPC's representation regarding Plaintiffs' so-called grower management problems performance were negligently, willfully and recklessly prepared and presented and were material and intended to show that the Plaintiffs' the [sic] management problems were a true, correct, and fair analysis.

(Compl. ¶¶ 86 & 103.)

Both of these alleged representations fail for numerous reasons.  First, Plaintiffs fail to plead with particularity the time, place, and contents of the alleged false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.  Fed. R. Civ. P. 9(b); *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013).  Thus, for this reason alone, Plaintiffs' negligent misrepresentation and fraud claims should be dismissed under Rule 9(b).

Second, the Court should dismiss the negligent misrepresentation and fraud claims because Plaintiffs could not justifiably rely upon these alleged misrepresentations.  The elements for both negligent misrepresentation and fraud require Plaintiffs to show, among other things, justifiable reliance.  *Martin v. Mountain St. Univ., Inc.*, No. 5:12-03937, 2014 WL 1333251, at * 6 (S.D. W. Va. Mar. 31, 2014) (negligent misrepresentations requires an injury that results from justifiable reliance on the misrepresentation); *Kidd v. Mull*, 215 W. Va. 151, 156, 595 S.E.2d 308, 313 (W. Va. 2004); *Bluestone Coal Corp. v. CNX Land Res., Inc.*, No. 1:107-0549, 2007 WL 6641647, at * 4 (S.D. W. Va. 2007) ("In West Virginia a plaintiff cannot establish fraud without alleging both justifiable and detrimental reliance on the false representation").

Here, Plaintiffs could not have justifiably relied on either of the supposed false representations alleged above because Plaintiffs knew Triple R terminated the 2012 BPA on October 3, 2016, and instructed Pilgrim's not to deliver chicks because Triple R was closing its doors.  (Ex. B.)  Plaintiffs were also aware Pilgrim's accepted Triple R's decision to terminate the 2012 BPA and would not place additional chicks with Triple R based on Triple R's instructions not to do so.  (Exs. C & D.)  Hence, the negligent misrepresentation and fraud causes of action should be dismissed.[6]

**G.      The Court should dismiss Plaintiffs' PSA § 192(a) and (b) allegations.**

Pilgrim's acknowledges the Court's previous determination in *M&M Poultry Company, Inc. v. Pilgrim's Pride Corporation* that "anticompetitive effect is not an essential element that need be alleged to state a claim for violation of § 192(a)-(b)."  Civil Action No. 2:15-cv-32 (N.D. W. Va. Oct. 26, 2015) (ECF 31 at 28.)  However, in light of the Court's trial of PSA claims in *M&M* and recent legal developments involving PSA § 192(a) and (b), Pilgrim's requests the Court to reconsider its position, hold that harm to competition must be shown, and bar Plaintiffs' PSA claims for failure to plead facts showing harm to competition.

---

[6] Besides being barred by limitations, Plaintiffs' fraud claim based on an alleged 2006 representation to Plaintiff Hedrick "that as long as he grew good birds, he would continue to receive placements of baby chicks from PPC" (Compl. ¶ 83) is not viable because it (1) fails to satisfy the particularity requirements of Rule 9(b), (2) is vague and ambiguous, and (3) Plaintiffs could not justifiably rely on the representation because the BPA's termination provision contradicts the claimed representation. Section D of the 2012 BPA authorizes Pilgrim's to terminate without any cause so long as 90 days' notice is provided before the effective date of termination.  (Ex. A, § D); *M&M Poultry, Inc.*, 281 F. Supp. 3d at 620; *McCoy v. S. Energy Homes, Inc.*, No. 1:09-1271, 2012 WL 1409533, at * 14 (S.D. W. Va. Apr. 23, 2012) (citing C.J.S. Fraud § 55 (2012) ("A reliance on oral representations is unjustifiable for purposes of a fraud claim where a written agreement states a fact contradictory to the claimed representation.") AM. JUR.2d Fraud and Deceit § 264 (2012) ('Thus, where an alleged misrepresentation is explicitly addressed and negated in a written agreement signed by the parties, any reliance on a contrary oral assertion is unreasonable as a matter of law.")).

### 1.    Recent developments since the Court's October 26, 2015 decision.

Since the Court's decision in *M&M*, there have been new legal developments supporting Pilgrim's contention that PSA § 192(a) & (b) require Plaintiffs to show harm to competition. First, on December 21, 2018, the Eight Circuit Court of Appeals issued an opinion stating that if PSA § 192(a) and (b) were read literally, the terms would establish no standard at all and thus "these provisions concern only those business dealings that have an actual or potential adverse effect on competition, . . ."  *Org. of Competitive Mrkts v. U.S. Dep't of Agric.*, 912 F.3d 455, 457 (8th Cir. 2018).  Contrary to the Court's earlier decision, the Eighth Circuit confirmed that its case law holds that a prevailing plaintiff must show an actual or potential adverse effect on competition.  (*Compare* ECF 31 at 20-22 *with Org. of Competitive Mrkts,* 912 F.3d at 457.)

Second, legislation adopted by Congress demonstrates its approval of the circuit courts' unanimous interpretations of the PSA[7] requiring that an anticompetitive effect or likelihood thereof be shown to prevail under subsections (a) and (b).  Specifically, Congress, using its power of the purse for budget years 2013, 2014, and 2015, specifically precluded the United States Department of Agriculture ("USDA") from finalizing certain proposed rules ("Proposed Rules") that would water-down, if not eradicate, the element of anticompetitive harm.[8]  Of particular relevance to this case were the following Proposed Rules eliminating the requirement that a plaintiff plead and prove an anticompetitive effect in Title 9 of the Code of Federal Regulations:

---

[7] *See, e.g., Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278-79 (6th Cir. 2010), *cert denied*, 131 S.Ct. 1044 (2011); *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 363 (5th Cir. 2009) (en banc); *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1228-30 (10th Cir. 2007); *London v. Fieldale Farms Corp.*, 410 F.3d 1295, 1303-04 (11th Cir. 2005), *cert. denied*, 546 U.S. 1034 (2005).

[8] *See, e.g.,* Consolidated and Further Continuing Appropriations Act, 2013, Pub. L. 113-6, 127 Stat. 198, § 742 (Mar. 26, 2013); *see also* Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. 113-235, 128 Stat. 2167, § 731 (Dec. 16, 2014).

- § 201.3(c) stating that "[a] finding that the challenged act or practice adversely affects or is likely to adversely affect competition is not necessary in all cases" under § 192 (a) and (b);

- § 201.210 identifying a laundry list of conduct deemed to be "unfair, unjustly discriminatory and deceptive practices or devices," such as, but not limited to, an "unjustified material breach of a contractual duty, express or implied"; "an action or omission that a reasonable person would consider unscrupulous, deceitful or in bad faith"; retaliatory conduct; the refusal to provide statistical information or data upon request by a product or grower; and the inclusion of such provisions as limitation of liability clauses or jury waivers in producer contracts; and

- § 201.211 establishing criteria for the USDA to consider in determining whether conduct violates § [192](b).[9]

On October 18, 2017, the final death knell occurred when the USDA withdrew these Proposed Rules.  *See* Withdrawal of Interim Final Rule, 82 Fed. Reg. 48,594 (Oct. 18, 2017); Notice of No Further Action on Notice of Proposed Rulemaking, 82 Fed. Reg. 48,603 (Oct. 18, 2017).  As justification for its decision, the USDA, among other things, acknowledged that various circuit courts of appeals would not follow the USDA's proposed interpretation of the PSA and its regulations.[10]  *See* 82 Fed. Reg. at 48596.

Accordingly, in light of these recent legal developments, Pilgrim's requests the Court to reconsider its previous determination in *M&M Poultry* that "anticompetitive effect is not an essential element that need be alleged to state a claim for violation of § 192(a)-(b)," hold that

---

[9] *See* Implementation of Regulations Required Under Title XI of the Food, Conservation and Energy Act of 2008; Conduct in Violation of the Act, 75 Fed. Reg. 35338 *et seq.* (proposed June 22, 2010) (to be codified at 9 C.F.R. pt. 201).

[10] The Trump Administration's decision to withdraw the Proposed Rules was recently challenged, but the United States Eighth Circuit Court of Appeals rejected the appeal after concluding, among other things, that the Trump Administration had "legitimate regulatory and substantive concerns" about the Proposed Rules, and thus its withdrawal decision was not arbitrary and capricious.  *Org. for Competitive Mkts*, 912 F.3d at 460-61.

harm to competition must be shown, and bar Plaintiffs' PSA claims for failure to plead facts showing harm to competition.[11]

> 2.      **In light of recent developments, Plaintiffs' PSA § 192(a) and (b) claims fail.**

In light of the new legal developments, the Court should dismiss Plaintiffs' PSA claims because they fail to allege Pilgrim's conduct actually harmed competition.[12]

Because harm to competition must be demonstrated, standard antitrust principles apply. *Wheeler*, 591 F.3d at 357-63.  As with other antitrust statutes, federal courts "apply a rule of reason in determining the lawfulness of a particular practice."  *Armour & Co. v. United States*, 402 F.2d 712, 717 (7th Cir. 1968); *In re Pilgrim's Pride Corp.*, 728 F.3d 457, 462 (5th Cir. 2013).  In applying a rule of reason analysis, the inquiry is whether, in light of all the relevant

---

[11] If the Court remains convinced Plaintiffs are not required to plead and prove harm to competition under PSA § 192(a) and (b), Pilgrim's respectfully requests the Court to make certain findings so that Pilgrim's may file a petition for interlocutory review with the United States Fourth Circuit Court of Appeals under 28 U.S.C. § 1292(b).  Additionally, Pilgrim's requests the Court to state that it is of the opinion that the Court's order gives rise to two controlling questions of law as to which there is a substantial ground for difference of opinion, that an immediate appeal may materially advance the ultimate termination of the litigation, and to include a certification allowing an interlocutory appeal.  Pilgrim's further requests the Court to stay this proceeding under 28 U.S.C. § 1292(b).  The two issues are:  (1) Whether a prevailing plaintiff must plead and prove harm to competition or a likelihood thereof under 7 U.S.C. § 192(a) and/or (b); and (2) If so, whether the "likelihood of competitive injury" tine concerns incipient violations where harm has not yet occurred and therefore does not apply to § 192(a)-(b) claims seeking money damages based on past conduct as opposed to injunctive relief for future conduct?

[12]  Plaintiffs cannot recover monetary damages based on an incipient violation as opposed to an actual harm to competition.  Under the PSA, "a likelihood of competitive injury" concerns *incipient violations* where harm *has not yet occurred.*  In those cases, the appropriate relief is injunctive relief.  This interpretation of the statute is consistent with PSA case law.  *IBP, Inc. v. Glickman*, 187 F.3d 974, 977 (8th Cir. 1999) ("[A] practice which is likely to reduce competition … can be a predicate for a cease and desist order."); *DeJong Packing Co. v. U.S. Dep't of Agric.*, 618 F.2d 1329, 1336-37 (9th Cir. 1980) (holding that a cease and desist order could issue based on a likelihood of harm to competition because "the purpose of the Act is to *halt* unfair trade practices in their incipiency, *before* harm has been suffered.") (emphasis added).  Here, Plaintiffs seek money damages based on Pilgrim's acts occurring before Triple R terminated the 2012 BPA on October 3, 2016; hence, Plaintiffs must show actual harm to competition rather than a mere incipient violation.  *See Adams v. Pilgrim's Pride Corp.*, No. 2:09-cv-397, 2011 WL 5330301 (E.D. Tex. Sept. 30, 2011), *rev'd*, *Agerton v. Pilgrim's Pride Corp.*, 728 F.3d 457 (5th Cir. 2013) (In grower contract termination case, district court's imposition of liability under PSA § 192 based on a "likelihood of injury" was reversed and rendered because Pilgrim's conduct did not harm competition).

facts, the restraint imposed is such that it may suppress or destroy competition.  *In re Pilgrim's Pride Corp.*, 728 F.3d at 462 (citing *Am. Needle, Inc. v. NFL*, 560 U.S. 183 (2010)).  Plaintiffs must allege that Pilgrim's "conduct had an impact upon competition in Plaintiffs' profession, not just upon his business, and that the alleged restraint on trade was reasonably calculated to prejudice public interest."  *JES Props., Inc. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1281 (M.D. Fla. 2003) (citations omitted).

In applying a rule of reason analysis, Plaintiffs must prove that Pilgrim's conduct will have a substantial, adverse effect on competition.  The first step is to plead a relevant market, including both a product market and a geographic market.  *See United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377 (1956); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011).  The market definition serves as a tool to determine Pilgrim's alleged market power.  *Kolon Indus.* at 493; *RCM Supply Co., Inc. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1076 (4th Cir. 1982).

Afterwards, Plaintiffs must show Pilgrim's has "market power" within the relevant market—that is, the ability to raise or lower prices above or below those that would be charged in a competitive market.  *NCAA v. Bd. of Regents*, 468 U.S. 85, 109 n.38 (1984); *accord Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 27 n.46 (1984).  Simply stated, "[f]irms that lack power cannot injure competition no matter how hard they try."  F. Easterbrook, *The Limits of Antitrust*, 63 Tex. L. Rev. 1 (1984).  Courts generally hold that proof of a defendant's market power is a prerequisite for a plaintiff seeking to use a market analysis to satisfy its burden of proving a likely anticompetitive effect.  *See, e.g., Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 622-23 (7th Cir. 2005); *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 213 (3d Cir. 2005); *Menasha Corp. v. News Am. Mktg. In-Store*, 354 F.3d 661, 663 (7th Cir. 2004) ("The first

requirements in every suit based on the Rule of Reason is market power, without which the practice cannot cause those injuries . . . that matter under the federal antitrust law.")  "Proof of market power, then, for many courts is a critical first step, or 'screen,' or 'filter,' which is often dispositive of the case."  *SCFS ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th Cir. 1994).

Market power is often defined by a defendant's market share.  A lower market share precludes a finding of market power.  For example, the Supreme Court has determined that a 30 percent market share is insufficient to support a finding of market power.  *Jefferson Parish Hosp. Dist. No. 2,* 466 U.S. at 26-29.

Here, Plaintiffs fail to plead facts identifying the relevant market and its two components—the relevant product market and the relevant geographic market.  (*See generally* Compl.)  Plaintiffs also fail to show Pilgrim's place, if any, in the relevant market and whether Pilgrim's had sufficient market power in the relevant market.  (*See generally id.*)  Although the Complaint references Pilgrim's having "oligopsony power" (*Id.* ¶ 18), this is a mere naked assertion devoid of factual enhancement and is thus insufficient to satisfy Rule 12(b)(6).  *See Iqbal*, 129 S.Ct. at 1949.  The Complaint does not include any allegations discussing the number of chicken growers in the region, the percentage of the market Pilgrim's allegedly controls, or what percentage of Pilgrim's chickens are raised by Plaintiffs or other growers.  (*See generally* Compl.)  In short, the Complaint does not show Pilgrim's status within West Virginia's chicken industry.  (*Id.*)  In the absence of allegations showing market power, Plaintiffs fail to show Pilgrim's conduct harms competition.  *See London*, 410 F.3d at 1304-05.

The PSA claims also fail because Plaintiffs do not explain how Pilgrim's—given its role in the relevant market, if any—could harm competition based on the alleged misconduct.  The absence of such facts makes it impossible to comprehend how Pilgrim's alleged unilateral

conduct with respect to one grower can harm competition. Under standard antitrust principles, courts are hesitant to condemn the unilateral act of a single firm. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767-69 (1984).

For all these reasons, Plaintiffs' PSA § 192(a) and (b) claims fail as a matter of law.

**3.      Under any interpretation of PSA § 192(a) and (b), the claims are barred.**

Regardless whether harm to competition must be pleaded, the Court should dismiss the PSA claims because they are barred for numerous reasons.

First, to the extent Plaintiffs complain about alleged "reprisals" occurring after Plaintiff Hedrick spoke out against poultry companies "at the Department of Justice/Department of Agriculture Town Hall Meeting on Capitol Hill in DC in 2010" (Compl. ¶ 69-74), those allegations are barred by limitations. The PSA's statute of limitations is four years. *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004); *Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1460 (8th Cir. 1995). Since Plaintiffs Complaint was filed on October 25, 2018 (ECF 1), all conduct occurring before October 25, 2014 is time barred.

Second, the 2012 BPA includes a release wherein Triple R released and extinguished all claims it may have against Pilgrim's under any prior contract governing the relationship between Triple and Pilgrim's. (Ex. A, § H.10.) Consequently, the release bars claims arising before the 2012 BPA's March 16, 2012 effective date.

Finally, to the extent Plaintiffs rely on the PSA to complain about the conclusion of the contractual arrangement between Triple R and Pilgrim's (Compl. ¶¶ 69-74), their complaints are barred because Pilgrim's did not violate the statute by accepting Triple R's decision to terminate the 2012 BPA and waiving Pilgrim's right to 90 days' notice before the termination became effective. (*See* Compl. ¶ 69-74.)

**4.      Under any interpretation of PSA § 192(a) and (b), Plaintiffs cannot recover attorney fees under the PSA.**

In Complaint paragraph 75, Plaintiffs request the Court to award attorney fees under the PSA.  But the Court should dismiss Plaintiffs' request for fees under the statute with prejudice because the PSA does not provide for the recovery of attorney fees.

Under federal law, courts refuse to award attorney fees "[a]bsent explicit congressional authorization."  *Runyon v. McCrary*, 427 U.S. 160, 185 (1976).  Thus, in order to award attorneys' fees, the Court must look to the language of the federal statute and find a clear expression of Congress's intent to allow a prevailing party to recover fees.  *Id.* at 186.  "Generalized commands" are insufficient.  *Id.*

Here, Plaintiffs claim Pilgrim's violated PSA § 192(a) and (b).  (Compl. ¶¶ 69-75.)  But neither PSA § 192 nor § 209(a) afford Plaintiffs a right to recover attorneys' fees because neither provision explicitly affords a prevailing party the right to recover fees.  Accordingly, to the extent Plaintiffs seek to recover fees under the PSA, the Court should dismiss the request with prejudice.  *City of Clinton, Ar. v. Pilgrim's Pride Corp.*, 653 F. Supp. 2d 669, 674 (N.D. Tex. 2009), *aff'd on other grounds,* 632 F.3d 148 (5th Cir. 2010); *Liberty Mut. Ins. Co. v. Bankers Trust Co.*, 768 F. Supp. 70, 72-73 (S.D.N.Y. 1991) (denying fees under PSA § 209).

## IV.      CONCLUSION

For all the reasons discussed herein, Pilgrim's requests each and every cause of action alleged in Plaintiffs' Complaint be dismissed with prejudice.

Respectfully submitted,

/s/ *Peter G. Zurbuch*

Peter G. Zurbuch
WV State Bar # 5765
BUSCH, ZURBUCH & THOMPSON, PLLC
P.O. Box 1819
Elkins, WV 26241
Tel: (304) 636-3560
Fax: (304) 636-2290
Email: pzurbuch@bztlaw.com

—And—

Clayton E. Bailey
(Admitted *Pro Hac Vice*)
Benjamin L. Stewart
(Admitted *Pro Hac Vice*)
BAILEY BRAUER PLLC
Campbell Centre I
8350 N. Central Expressway, Suite 206
Dallas, Texas 75206
Tel: (214) 360-7433
Fax: (214) 360-7435
Email: cbailey@baileybrauer.com
        bstewart@baileybrauer.com

**ATTORNEYS FOR DEFENDANT
PILGRIM'S PRIDE CORPORATION**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with LR Gen P 5.06(b) on February 8, 2019.  As such, this document was served on all counsel of record who are deemed to have consented to electronic service as follows:

Jack A. Kolar, Esq.                             J. Dudley Butler, Esq.
Karen J. Gray, Esq.                            Butler Farm & Ranch Law Group, PLLC
Amanda Hitt, Esq.                             499-A Breakwater Drive
Government Accountability Project, Inc.   Benton, MS 39039
1612 K Street, NW
Suite 1100
Washington, D.C. 20006

Keith Lively, Esq.
Doyle, Barlow & Mazard PLLC
1010 Temple Street
Hinton, WV 25951

*/s/ Peter G. Zurbuch* _____