## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## AT ELKINS

**TRIPLE R RANCH, LLC, and**
**ERIC HEDRICK**

      **Plaintiffs,**

**vs.**                            **CIVIL ACTION NO**: 2:18-cv-109 (Bailey)

**PILGRIM'S PRIDE CORPORATION**

      **Defendant.**

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**Keith Lively, Esq. (WV Bar #8919)**
**Doyle, Barlow & Mazard, PLLC**
1010 Temple Street
Hinton, WV 25951
703.862.0215 (tel)
202.589.1819 (fax)
klively@dbmlawgroup.com

**Government Accountability Project, Inc.**
**Jack A. Kolar, Esq.**
(*admitted pro hac vice*)
Jackk@whistleblower.org
(202) 457-0034, ext. 197
**Karen J, Gray, Esq.**
(*admitted pro hac vice*)
Kareng@whistleblower.org
(202) 457-0034, ext. 122
**Amanda Hitt, Esq.**
(*admitted pro hac vice*)
Amandah@whistleblower.org
(202) 457-0034, ext. 159.
1612 K Street, NW, Suite 1100
Washington, DC  20006

**J. Dudley Butler, Esq.**
(*admitted pro hac vice*)
**Butler Farm & Ranch Law Group, PLLC**
499-A Breakwater Dr.
Benton, MS  39039
(662) 673-0091 (tel)
(662) 673-0091 (fax)
jdb@farmandranchlaw.com

*ATTORNEYS FOR PLAINTIFF TRIPLE R RANCH and ERIC HEDRICK*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES.............................................................................................................iv

FACTUAL BACKGROUND....................................................................................................1

LEGAL STANDARD FOR A MOTION TO DISMISS...............................................................2

ARGUMENT.....................................................................................................................3

I.   THE COMPLAINT PLEADS A LEGALLY SUFFICIENT
     CLAIM UNDER THE PSA..............................................................................................3

     A.  The Complaint is Replete with Allegations of Actions by PPC in Violation of the
         PSA...............................................................................................................4

     B.  The PSA is Not an Antitrust Statute and Allegations of Anticompetitive Injury Are
         Not Required to State a Legally Sufficient Claim under the Act ........................6

         1.  Defendant Does Not Provide Any Persuasive Reason that this Court
             Should Deviate from Its Prior Ruling in the *M&M* Case...........................6

         2.  The Plain Language of the PSA Does Not Require Proof of Competitive Injury
             to Prove a Claim under § 192 (a) and (b)................................................9

     C.  Plaintiffs' Complaint Contains Sufficient Allegations to Prove Likelihood of
         Competitive Injury; Therefore, it is Not Subject to Dismissal at the Pleading
         Stage............................................................................................................10

     D.  The Court Should Not Certify the PSA Claim for Interlocutory Appeal..................12

II.  PLAINTIFF ERIC HEDRICK AS AN INDIVIDUAL HAS STANDING TO SUE FOR
     ALL OF HIS CLAIMS EXCEPT THE BREACH CLAIMS..............................................13

III. PLAINTIFFS' MISREPRESENTATION CLAIMS MEET THE REQUIREMENTS
     OF RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE...........................16

IV.  PLAINTIFF TRIPLE R'S BREACH OF CONTRACT CLAIM (COUNT IV)
     IS NOT SUBJECT TO DISMISSAL...............................................................................19

V.   PLAINTIFF TRIPLE R HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF
     THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER WEST VIRGINIA LAW
     (COUNT V)......................................................................................................21

**VI.    PLAINTIFFS' AFPA, FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS
        ARE NOT TIME-BARRED**…………………………………………………………………………**22**

      **A.   The AFPA Claim is Timely within the Applicable Two-Year Statute of
              Limitations**……………………………………………………………………………………**22**

      **B.   Nor are the Intentional and Negligent Misrepresentation Claims by the Two-Year
              Statute of Limitations**……………………………………………………………………**26**

**VII.   *A FORTIORI*, PLAINTIFFS' AFPA CLAIM IS NOT BARRED BY THE APPLICABLE
        FOUR-YEAR STATUTE OF LIMITATIONS UNDER THE PSA**………………………………**26**

**CONCLUSION**………………………………..……………………………………………………………………………**28**

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*In re American Honda Motor Co., Dealerships Realtors Litig.*,
    941 F. Supp. 528, 537 (D. Md. 1996).................................................................25
*AMTRAK v. Morgan,* 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)......................19
*Barnosky Oils, Inc. v. Union Oil Co. of California*, 665 F.2d 74, 81 (6th Cir. 1981).........…..........27
*Barraza v. Bank of Am., N.A.,* 2012 U.S. Dist. LEXIS 196799,
    **10-11, 2012 WL 12886438 (W.D. Tex. 2012).......................................................15
*Beamsley v. C.I.R.*, 205 F.2d 743, 748 (7th Cir. 1953)...........................................................7
*Been v. O.K. Indus., Inc.,* 495 F.3d 1217, 1230-31 (10th Cir. 2007).........................................10-11
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)......................................................2
*Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W.Va. 2014).....................................16
*C. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164, 186 (1994)....................................................................................8-9
*City of Los Angeles v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 161164,
    2014 WL 6453808 (C.D. Cal. Nov. 14, 2014)........................................................12
*Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*,
    681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009)........................................................19
*Edwards v. City of Goldsboro,* 178 F. 3d 231, 243-44 (4th Cir. 1999)......................................2
*Fieldale Farms Corp. v. London*, 410 F.3d 1295, 1303 (11th Cir. 2005).........................................10
*Field v. Mans*, 516 U.S. 59, 70-76 (1995).........................................................................15
*Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)...............................................18, 25
*Gerace v. Utica Veal Co.*, 580 F. Supp. 1465 (N.D.N.Y 1984).............................................10
*Gray v. Walmart Stores, Inc.*, 2011 U.S. Dist. LEXIS 51155,
    2011 WL 1831780 (E.D. N.C. May 12, 2011)........................................................18
*Growers 1-7 v. Ocean Spray Cranberries, Inc.*, 2014 U.S. Dist. LEXIS 61654,
    2014 WL 1764533 *20 (D. Mass. May 2, 2014).....................................................10
*Hedquist v. Walsh*, 2017 U.S. Dist. LEXIS 166564, **17 (D. Wyo. Mar. 13, 2017)......................19
*Highmark West Virginia Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007)....................................22
*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104-05, 2013 U.S. App. LEXIS 10185,
    2013 WL 2159502 (9th Cir. 2013)........................................................................15
*Hoffmaster v. Guiffrida*, 630 F. Supp. 1289, 1290-91 (S.D. W. Va. 1986)....................................21
*Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990)..............................................24
*Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1460 (8th Cir. 1995)....................................26
*Johns v. Eastman Chem. Co.*, 248 F. Supp. 3d 765, 771, (S.D. W.Va. 2017)..................................16
*Jones v. Rogers Memorial Hosp.*, 143 U.S. App. D.C. 51,
    442 F.2d 773, 775 (D.C. Cir. 1971).....................................................................25
*Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383,
    2015 U.S. Dist. LEXIS 101778.............................................................................16
*Knapp v. American General Finance, Inc.*, 111 F. Supp. 2d 758, 767 (S.D. W. Va. 2000)............21
*Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1048................................................................24

*Kwikset Corp. v. Superior Court,* 246 P.3d 877, 890-891 (Cal. 2011)............................................15

*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*)......................................................18

*Leiba v. Holder*, 699 F.3d 346, 354 (4th Cir. 2012)................................................................9

*Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986).................................................................18

*M&M Poultry Co., Inc. v. Pilgrim's Pride Corp.,* C.A. No. 2:15-cv-32 (JPB)
(N.D. W. Va. Oct. 26, 2015) (ECF 31 at 28.)) ..........................................................6-7

*McDonough*, 799 F.3d at 931, 946 (8th Cir. 2015)................................................................19

*Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*,
2009 WL 875553, *20 (E.D.N.Y. March 30, 2009).................................................10

*Morris v. Wachovia Secs., Inc.*, 277 F. Supp. 2d 622, 645 (E.D. Va. 2003)...................................17

*In re Mushroom Direct Purchaser Antitrust Litig.*,
514 F. Supp. 2d 683, 696 (E.D. Pa. 2007).........................................................10

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ...................................................................3

*Org. of Competitive Mrkts v. U.S. Dep't of Agric.*, 912 F.3d 455, 457 (8th Cir. 2018)...............8

*Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)..................................27

*Peck v. General Motors Corp.*, 894 F.2d 844, 849..................................................................27

*Pickett v. Tyson Fresh Meats, Inc.,* 420 F.3d 1272 (Fed. 11th Cir., 2005)....................................10

*R.J. Reynolds Tobacco Co. v. Mkt. Basket Food Stores, Inc.*,
2006 U.S. Dist. LEXIS 61927 (W.D. N.C Aug. 21, 2006).............................................17

*R.J. Reynolds Tobacco Co. v. S K Everhart, Inc.*,
2003 U.S. Dist. LEXIS 13440 (M.D. N.C. July 31, 2003).............................................17

*Richards v. Mileski*, 213 U.S. App. D.C. 220, 662 F.2d 65, 73 (D.C. Cir. 1981)...........................25

*Russello v. United States*, 464 U.S. 16, 23 (1983)..................................................................9

*Schumacher v. Tyson Fresh Meats, Inc.*, 434 F. Supp. 2d 748, 754 (D.S.D. 2006).....................10

*Spoor v. PHH Mortg. Corp.*, 2011 U.S. Dist. LEXIS 24952 *13,
2011 WL 883666 (N.D.W.Va., 2011)..............................................................21

*Stafford v. Wallace,* 258 U.S. 495, 514-15 (1922))...............................................................11

*Stand Energy Corp. v. Columbia Gas Transmission Corp.*,
373 F. Supp. 2d 631*, 644 (S.D. W. Va. 2005)....................................................22

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190.........................................................19

*U.S. ex rel.] Bilotta [v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014)...........16

*United States v. Kwai Fun Wong*, 135 S. Ct. (2015).............................................................24

*Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004)............................................26-27

*White v. PPCs' Pride Corp.*, 2008 WL 4471656 (E.D. Tex. Sept. 29, 2008).........................10, 18

*Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 749 (N.D.W. Va. 2012)................20

*United States v. Dish Network, LLC*, 2010 U.S. Dist. LEXIS  8957 (C.D. Ill. Feb. 4, 2010)...........13

*Zuni Public School Dist. No. 89 v. Dep't of Educ.*,
550 U.S. 81, 119 (2007) (Scalia, J., dissenting)...............................................8

**STATUTES**

7 U.S.C. §§ 181-129.................................................................................................13

7 U.S.C. § 192(a) and (b)..................................................................................*passim*

7 U.S.C. § 197(c)......................................................................................................1

7 U.S.C. § 209 ...................................................................................................*passim*

7 U.S.C. § 2301 *et seq*..................................................................................................3-4, 14

28 U.S.C. § 1292(b)........................................................................................................12

42 U.S.C.S. § 3601 *et seq*..............................................................................................12

**REGULATIONS**

Fed. R. Civ. P. 8(a)(2)......................................................................................................3

Fed. R. Civ. P. 9(b)....................................................................................................16-18

Fed. R. Civ. P. 12(b)(6).................................................................................................2, 3

82. Fed. Reg. 48,597 (Oct. 18, 2017)...............................................................................8

**OTHER AUTHORITIES**

2A J. Moore & J. Lucas, Moore's Federal Practice, P 9.03 at 9-34 (2d ed. 1986)...................18

H.R.Rep. No. 85-1048, at 1, 1958 U.S.C.C.A.N. at 5213).............................................11

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Eric Hedrick and Triple R Ranch, LLC respectfully submit this Opposition to Defendant's Motion to Dismiss on behalf of Pilgrim's Pride Corporation (PPC or Defendant). See Defendant's Motion to Dismiss, ECF 19 (MTD), and Memorandum of Law in Support of Motion to Dismiss, ECF 19-5 (Memo. in Supp.)  Through a series of detailed fact-based allegations set forth in 21 pages and 68 paragraphs (see Complaint, ECF 1), Plaintiffs Eric Hedrick (Hedrick) and Triple R Ranch, LLC (Triple R) properly alleged all of its federal and state claims.  Defendant's Motion to Dismiss should be denied and this litigation should proceed.

## FACTUAL BACKGROUND

In 2007, Eric Hedrick, on behalf of his company and Triple R entered into a poultry growing arrangement with Defendant by signing a standard Boiler Production Agreement (BPA) (Amended Complaint ¶ 6).  Defendant required Hedrick to sign another boilerplate BPA in 2009 and then again in 2012. Hedrick and Triple R refer to these agreements as boilerplate because at no time was Hedrick able to negotiate its terms, save for Hedrick and Triple R's right to refuse the BPA's arbitration clause, a right recently granted to poultry growers by Section 210 of the Packers and Stockyards Act (PSA), 7 U.S.C. § 197(c). PPC's contracts are always a take-it-or-leave-it proposition drafted solely by Defendant.  (Complaint ¶ ¶ 8, 10.) Moreover, Defendant is the only poultry processor in the area, which means that it holds all the leverage against the local growers. (*Id.* at ¶ 11.)

Under this arrangement, Defendant controlled absolutely every detail of the operation; however, Hedrick and Triple R were responsible for the cost of its chicken houses and equipment which ran in the hundreds of thousands of dollars. (*Id*. at ¶ 1.) Hedrick and Triple R incurred significant debt in reliance on the BPA, fronting the cost for equipment, utilities, and maintenance. (*Id*. at ¶ 1.) Defendant provided Hedrick and Triple R with flocks of chickens and

proprietary feed and medicine.  Defendant controlled the quality of the chickens delivered to Plaintiffs, the quality of the feed/medicine provided to Hedrick and Triple R, and virtually every other condition on Plaintiffs' farm. (*Id*. at ¶ 13.)

As alleged in the Complaint, as of 2016, Plaintiffs planned to operate the broiler houses on their farm for another 25 years. (Complaint, ¶ 67.) Indeed, a well-constructed broiler house has an average life span of 30 years. (Complaint, ¶ 38.) Defendant, however, rendered Plaintiffs' plan economically disastrous through the contracts of adhesion they coerced Plaintiffs into entering (Complaint, ¶¶ 9, 13, and 15-16), and the illegal control and detrimental practices Defendants imposed pursuant to those contracts, as alleged throughout the Complaint.

By 2016, "Defendant's decision to refuse to help Plaintiffs and cease sending flocks to Plaintiff[s] . . . left the Plaintiffs with no means of paying the mortgage that the Plaintiff had on its farm, including the home in which Eric Hedrick's children and grandchildren live. (Complaint, ¶ 65.) Hedrick and Triple R had literally and repeatedly begged PPC's for months to help their family farm survive, but to no avail.

Additional factual allegations of the Complaint are discussed below where pertinent to the legal arguments.

### LEGAL STANDARD FOR A MOTION TO DISMISS

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiffs. *Edwards v. City of Goldsboro,* 178 F. 3d 231, 243-44 (4th Cir. 1999). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint

"does not need detailed factual allegations." *Id.* at 545. In fact, Justice Souter's opinion for the Court succinctly articulated the pleading standard required under *Twombly*: "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court in *Twombly* reiterated that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 555; Fed. R. Civ. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has utterly failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Claims shall not be dismissed simply because someone may not believe the allegations or feels that recovery is remote or unlikely.  *See Id.* at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."). *See also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). Regardless of whether PPC agrees with Plaintiffs' allegations against it, there is no doubt that the claims have been properly pled.

For the reasons explained below, the Court should deny Defendant's Motion to Dismiss and permit Plaintiffs to move forward on all of their causes of action.

## ARGUMENT

## I. THE COMPLAINT PLEADS A LEGALLY SUFFICIENT CLAIM UNDER THE PSA

Defendant challenges the legal sufficiency of the statutory claim under the PSA in its MTD (see p. 2, ¶ 10 – "Plaintiffs' allegations do not give rise to a violation of the PSA"), although it does not expound on the basis for its challenge in its Memo. in Supp. Notably, Defendant does not argue that Plaintiffs' other federal statutory claim – under the Agricultural

Fair Practices Act of 1967 (AFPA) – fails to state a legally valid cause of action under that

statute, thereby implicitly conceding that it does.

### A.   The Complaint is Replete with Allegations of Actions by PPC in Violation of the PSA

The PSA provides in pertinent part:

> It shall be unlawful for any packer . . . with respect to livestock, meats, meat food products, or livestock products in unmanufactured form, or for any live poultry dealer with respect to live poultry, to:
>
> > (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or
> >
> > (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect. . . .

7 U.S.C. § 192(a) and (b). The Complaint plainly alleges multiple practices by PPC that

constituted violations of these provisions, especially of subsections (a) and (b) – unfair, unjustly

discriminatory, deceptive, practices and devices, and practices that subjected Plaintiffs to undue

or unreasonable prejudice or disadvantages.

The Complaint alleges that PPC coerced Plaintiffs (and other chicken growers in the

vicinity) to enter into growing contracts that constituted contracts of adhesion, in that it was

impossible for Plaintiffs to negotiate any of their terms (Complaint, ¶¶ 9, 10, 13, 15-16.) The

Complaint avers that PPC controlled virtually every dimension of the poultry growing process.

(See, e.g., Complaint, ¶¶ 8, 13, 19, 21, 23, 30-31, 42, 46.)

PPC compensated Plaintiffs based on the so-called "tournament system." "This

tournament system ensures that PPC's costs are consistent, but the growers can neither predict

nor control their pay.  Indeed, PPC so dominated the growers that the growers were in effect

"maintenance workers" or "sharecroppers" for PPC." (Complaint, ¶ 12.)

4

According to the Complaint, PPC used the tournament system to disguise its actual and total control of the growing process. (Complaint, ¶ 11.) "Under this one-sided arrangement, the growers are subject to the strict and unrelenting control of every detail by PPC. The only thing a grower can truly call his/her own is the extensive debt that is accumulated as a direct result of meeting PPC' strict demands." (Complaint, ¶ 14.)

According to the Complaint, PPC controls all of the key variables that determine growers' scores, ranking, and ultimately, their compensation, and therefore manipulates the rankings without detection by the growers, enabling PPC to artificially depress a particular grower's payout. PPC did so to artificially depress Plaintiffs' payouts. (Complaint, ¶¶ 13, 26.)

The Complaint alleges further that "PPC is easily able to exert such control and enforce such unconscionable arrangements because it is virtually the only broiler integrator to which the local growers can turn without an additional outlay of hundreds of thousands of dollars. There is virtually no other viable option, as Triple R has been painfully made aware since PPC unlawfully terminated the poultry growing arrangement. The Production Agreement gave PPC oligopsony power over Triple R and all the other growers by entangling them in PPC' archaic, abusive and unconscionable payout system, better known throughout the industry as the 'tournament system.'" (Complaint, ¶ 18.)

The complaint is replete with allegations of false and misleading representations that PPC made to Plaintiffs deceiving them into believing that growing chickens for PPC was an economically viable business, but ultimately culminating in Plaintiffs' financial ruin. (See, e.g., Complaint, ¶¶ 1, 22, 33-36, 38-39, 44-45, 47, and 48-52.) The Complaint alleges fraudulent concealment. For example, "[t]he Defendant has and continues to fraudulently conceal from said growers, including Plaintiffs, material facts regarding the detrimental effect to said growers, including Plaintiffs, resulting from the tournament system." (Complaint, ¶ 25; see also ¶¶ 47-48.)

"Plaintiffs reasonably relied on the PPC's representations concerning the longevity of the relationship and the promises from PPC personnel that they would be placing chicks on his farm, to his detriment and did not know that the representations[] were false until PPC informed him that they would not be placing chicks on his farm and subsequently failed to provide chicks in November of 2016." (Complaint, ¶ 65.)

Thus, it is clear that the Complaint's allegations give rise to violations of the PSA.

**B.     The PSA is Not an Antitrust Statute and Allegations of Anticompetitive Injury Are Not Required to State a Legally Sufficient Claim under the Act**

**1.     Defendant Does Not Provide Any Persuasive Reason that this Court Should Deviate from Its Prior Ruling in the *M&M* Case**

Defendant concedes, as it must, that four years ago this Court unequivocally rejected the identical Defendant's identical assertion "that 'anticompetitive effect is … an essential element that need be alleged to state a claim for violation of § 192(a)-(b)." MTD at 15 (quoting *M&M Poultry Co., Inc. v. Pilgrim's Pride Corp.,* C.A. No. 2:15-cv-32 (JPB) (N.D. W. Va. Oct. 26, 2015) (ECF 31 at 28.)). Although Defendant never asked this Court to reconsider its ruling in *M&M ,* Defendant urges that the Court should do so now, making this argument in effect an untimely motion for reconsideration.[1]

Defendant's tardy motion for reconsideration is woven from three strands, none of which avail as a persuasive reason for the Court to change its view of the statute.

First, defendant argues that *M&M* was wrongly decided because four pre-2011 appellate decisions from outside the Fourth Circuit "demonstrate[] … the circuit courts' **unanimous** interpretations of the PSA [as] requiring that an anticompetitive effect or likelihood thereof be shown to prevail under subsections (a) and (b)." MTD at 16 (emphasis added; footnote omitted).

---

[1] "Pilgrim's requests the Court to reconsider its position . . . ." Memo. in Supp. 15.

Defendant unsuccessfully made the same argument to this Court about alleged circuit "unanimity" —and cited the same cases as it cites in its present Memo. in Supp.—four years ago.

At that time, this Court carefully analyzed each of those four cases (among many others) and rejected — as "misleading" — defendant's contention that "that "'eight circuits decided that PSA §192(a) and (b) require an anticompetitive effect.'" *M&M,* ECF-31 at 20 (footnote and citation omitted). This Court also refused to endorse the view that "'[a]ll of these courts of appeals unanimously agree that an anticompetitive effect is necessary for an actionable claim under subsections (a) and (b).'" *M&M,* ECF-31 at 23. To the contrary, this Court found "the Courts of appeals have in fact not reached unanimity on this issue." *Id.* This Court also faulted the conclusions and reasoning of each of those out-of-Circuit, non-precedential decisions. *See id.* at 20-28.

Second, Defendant urges this Court to recant its decision in *M&M* because of three "recent developments":

- a 2018 decision by the Eighth Circuit endorsing, supposedly for the first time in that Circuit's history, the alleged unanimous consensus of all the other Circuits that plaintiffs must plead and prove an anticompetitive effect in order to make a viable claim under § 192(a)-(b), see Memo. in Supp. at 16;

- a 2017 decision by the USDA not go forward with an Interim Final Rule that would have had the effect of changing the status quo, in other words, a decision to make no changes and to stand pat on status quo, see Memo. in Supp. at 17;

- and three Continuing Appropriations Acts (for FY 2013, 2014, and 2017) barring the USDA from publishing new Rules regarding relevant sections of the PSA, *i.e.*, Acts that amounted to a decision to make no changes and to stand pat on status quo. See Memo. in Supp. at 16-17.

"These arguments are '[a]s thin as the homeopathic soup that was made by boiling the shadow of a pigeon that had been starved to death.," *Beamsley v. C.I.R.*, 205 F.2d 743, 748 (7th Cir. 1953) (citing a quotation attributed to Abraham Lincoln).

The 2018 Eighth Circuit decision, *Org. of Competitive Mrkts v. U.S. Dep't of Agric.*, 912 F.3d 455, 457 (8th Cir. 2018), is recent but says nothing new beyond what the other Eighth Circuit decisions – decisions this Court soundly rejected – had said. In other words, *Org. of Competitive Mrkts* merely reiterates authorities which this Court rejected in its prior decision. This is not a reason for the Court to alter its view of the PSA.

Along the same lines, the USDA's decision not to promulgate new Rules preserves the status quo; it does not change it. Moreover, a review of the USDA's decision reveals that that the agency withdrew the proposed Rules not because it agreed with defendant's interpretation of § 192(a)-(b) or because it believed most Circuits did, but simply because the issue is controversial, i.e., "If the IFR becomes effective, it will conflict with Fifth, Sixth, Tenth, and Eleventh Circuit precedent." 82. Fed. Reg. 48,597 (Oct. 18, 2017). Again, in *M & M*, the Court disagreed with the decisions of the Fifth, Sixth, Tenth, and Eleventh Circuits. Therefore, the USDA's decision should be immaterial to the Court's resolution of Defendant's motion.

Finally, although defendant may believe that the reasons behind Congressional decisions not to authorize the USDA to change the relevant rules are self-evident, courts are well-advised not to try to divine Congress' negative intent, i.e., to attempt to construe the reasons for its refusal to promulgate or authorize a regulation. "Citizens arrange their affairs not on the basis of their legislators' unexpressed intent, but on the basis of the law as it is written and promulgated." *Zuni Public School Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 119 (2007) (Scalia, J., dissenting). And courts ought not read too much (if anything at all) into a single paragraph of a continuing resolution. "'It does not follow ... that Congress' failure to overturn a statutory precedent is reason for this Court to adhere to it. It is "impossible to assert with any degree of assurance that congressional failure to act represent[ed]" affirmative congressional approval of

the [courts'] statutory interpretation...." *C. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 186 (1994) (citation omitted).

**2.**   **The Plain Language of the PSA Does Not Require Proof of Competitive Injury to Prove a Claim under § 192 (a) and (b)**

As the purpose of the PSA is undoubtedly broader in scope than the antitrust laws, the plain language of the PSA clearly delineates those protections that are apply regardless of harm to competition, and those that are meant to protect competition.

The first two subsections of 7 U.S.C. §192 make it unlawful for PPC to "(a) [e]ngage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or (b) [m]ake or give any undue or unreasonable preference or advantage to any particular person or locality in any respect or subject, any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect." Subsections (a) and (b) make no reference to restraints of commerce, creation of a monopoly, or the manipulation or control of prices.  In contrast, subsections (c) through (f) of §192 expressly render unlawful conduct that had the tendency, purpose or effect of restraining commerce or creating a monopoly or of manipulating or controlling prices.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same [a]ct, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Leiba v. Holder*, 699 F.3d 346, 354 (4th Cir. 2012) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).[2]  This reasoning has resonated

---

[2] The *Leiba* decision involved interpretation of a federal immigration statute and specifically the statutes use of the term "admitted" in one section of the statute, and "lawfully admitted for permanent residence" in another section of the statute which had distinctive definitions.  The Government in *Leiba* argued that for the sake of "congruity" between the two sections, these terms should be given the same meaning.  The *Leiba* court rejected this argument and opined that the very fact Congress deliberately chose the different wordings was evidence that the sections were not meant to be congruous. 699 F.3d at 354.

with district courts across the country for many of these same reasons. *See Schumacher v. Tyson Fresh Meats, Inc.*, 434 F. Supp. 2d 748, 754 (D.S.D. 2006)("7 U.S.C. § 192(a)[] does not prohibit only those unfair and deceptive practices which adversely affect competition."); *Gerace v. Utica Veal Co.*, 580 F. Supp. 1465 (N.D.N.Y 1984) (dismissing argument that § 192(a) required a showing of restraint on trade or competition).

Further, district courts have since picked up on *Wheeler*'s reasoning, expressly rejecting the opinions in *Been*, *London*, and *Pickett*[3]: "[I]f Congress had intended to similarly limit the scope of 192(a-b) to those acts which adversely affect competition, it could have included that same language therein, but did not." *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2009 WL 875553, *20 (E.D.N.Y. March 30, 2009); *See also White v. PPCs' Pride Corp.*, 2008 WL 4471656 (E.D. Tex. Sept. 29, 2008) (ruling that plaintiff need not prove an adverse effect on competition under §192(a) and (b) based on *Wheeler*).

Accordingly, the plain language of the PSA does not require proof of anticompetitive injury or proof of likelihood of competitive injury to prove a claim under § 192(a) and (b).

### C. Plaintiffs' Complaint Contains Sufficient Allegations to Prove Likelihood of Competitive Injury; Therefore, it is Not Subject to Dismissal at the Pleading Stage

If this Court is inclined to accept that some antitrust principles must be pled in order to maintain an action under §192 (a) and (b), Plaintiffs' Complaint contains sufficient allegations to prove that PPCs' conduct is "likely" to result in competitive harm. After all, "[a]t the motion to dismiss stage . . . 'the question is not whether antitrust injury indeed occurred but whether plaintiffs allege facts from which antitrust injury can be inferred.'" *Growers 1-7 v. Ocean Spray Cranberries, Inc.*, 2014 U.S. Dist. LEXIS 61654, 2014 WL 1764533 *20 (D. Mass. May 2,

---

[3] *Been v. O.K. Indus., Inc.,* 495 F.3d 1217, 1230 (10th Cir. 2007); *Fieldale Farms Corp. v. London*, 410 F.3d 1295, 1303 (11th Cir. 2005); *Pickett v. Tyson Fresh Meats, Inc.,* 420 F.3d 1272 (Fed. 11th Cir., 2005).

2014) (quoting *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 696

(E.D. Pa. 2007)).

Plaintiffs here have alleged that:

- PPC is vertically integrated;

- PPC controls every step of the chicken growing process;

- PPCs has monopsony or oligopsony power in the local area and that Hedrick and Triple R had no other alternatives than to contract with PPC; and

- PPCs has the power to depress prices paid to the grower.

Complaint, ¶¶ 8, 13, and 18.

If an integrator such as PPCs has monopsony power over the grower with the ability to

control the supply of chicks and depress Hedrick and Triple R's or the grower's payout, and

resell without having to lower its own prices to the consumer, courts have found that a plaintiff

has sufficiently alleged a likelihood of competitive injury because there is an adverse effect on

the growers and the consumers. *Been*, 495 F.3d at 1231-32 (Tenth Circuit held that growers

"need only prove that specific practices have the **effect of** injuring competition or likely to do

so.").

The Tenth Circuit provided its rationale for its opinion as follows: the "primary purpose

of [the PSA] is to assure fair competition and fair trade practices in livestock marketing and in

the meatpacking industry" and "to safeguard farmers . . . against receiving less than the true

market value of their livestock." *Id.* at 1232 (citing H.R.Rep. No. 85-1048, at 1, 1958

U.S.C.C.A.N. at 5213).  Moreover, the Tenth Circuit explained that the "chief evil" Congress

feared was the monopolistic practices of the packers, "enabling them unduly and arbitrarily to

lower prices to the shipper, who sells, and unduly and arbitrarily to increase the price to the

consumer, who buys." *Been*, 495 F.3d at 1228 (quoting *Stafford v. Wallace,* 258 U.S. 495, 514-

15 (1922)).

Because Plaintiffs have alleged that PPC has monopsony or oligopsony power, PPC controls the supply of chicks, Hedrick and Triple R has no other alternatives to sell chicks in the area, and PPC can depress the prices it pays to Hedrick and Triple R and other growers without having to lower its own prices to consumers, Plaintiffs have sufficiently alleged that PPCs conduct is likely to harm competition.

### D.    The Court Should Not Certify the PSA Claim for Interlocutory Appeal

In view of the points made above regarding the PSA, there is no warrant for the Court to certify this case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), as requested by Defendant.

In order to obtain interlocutory appeal, Defendant is required to demonstrate that the Court's decision on the PSA "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b).

As shown in Section C, above, Plaintiffs have properly pleaded facts showing that PPCs' conduct is "likely" to result in competitive harm. Therefore, appellate resolution of the question of **whether** such an injury is required is not likely to materially advance the ultimate termination of this litigation. *See, e.g., City of Los Angeles v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 161164, 2014 WL 6453808 (C.D. Cal. Nov. 14, 2014)(this requirement for interlocutory appeal was not met where "the City ha[d] sufficiently alleged a disparate-treatment claim under the [Fair Housing Act, 42 U.S.C.S. § 3601 et seq.]). Moreover, Plaintiffs plan to engage in vigorous discovery on this issue, and thereby further develop facts establishing that Defendants' conduct did in fact actually injure competition.

Moreover, if an interlocutory appeal were taken on this issue under the PSA, the parties would still have to litigate fully the remainder of Plaintiffs claims, which are essentially based on

the same factual allegations as the PSA claim. For this reason also, interlocutory appeal would

not materially advance the termination of the case. "[I] interlocutory appeal is not appropriate

when the litigation will proceed in substantially the same manner regardless of the resolution of

the issue proposed for appeal." *See United States v. Dish Network, LLC*, 2010 U.S. Dist. LEXIS

8957 (C.D. Ill. Feb. 4, 2010). In summary, the Court should deny Defendant's Motion to Dismiss

Count I under the PSA.

## II. PLAINTIFF ERIC HEDRICK AS AN INDIVIDUAL HAS STANDING TO SUE FOR ALL OF HIS CLAIMS EXCEPT THE BREACH CLAIMS

Defendant first argues that "[t]he Court should dismiss all of Plaintiff Hedrick's causes of

action filed in his individual capacity against Pilgrim's because he lacks standing to sue

[Defendant]." Memo in Supp. at 9. Plaintiffs concede that only Pilgrim Triple R has standing to

sue for breach of contract (Count IV) and breach of the covenant of good faith and fair dealing

(Count V), as only Triple R was in privity of contract with Defendant PPC. Defendant is

otherwise wrong: Plaintiff Hedrick has standing to sue on all of the other claims.

Count I is a statutory claim under the Packers and Stockyards Act of 1921, as amended. 7

U.S.C. §§ 181-129. Plaintiff Hedrick has standing to sue for a violation of the PSA because

Congress has broadly conferred standing to individuals just like him. Thus, the relevant section

of the PSA, 7 U.S.C. § 209 – titled "Liability to individuals for violations; enforcement generally

– provides in pertinent part as follows:

> (a) If any person subject to this chapter violates any of the
> provisions of this chapter . . . relating to . . . the purchase or sale of
> poultry, or relating to any poultry growing arrangement . . . he
> shall be liable to the person or persons injured thereby for the full
> amount of damages sustained in consequence of such violation.

> (b) Such liability may be enforced either (1) by complaint to the
> Secretary as provided in section 210 of this title, or (2) by suit in
> any district court of the United States of competent
> jurisdiction . . . .

7 U.S.C. § 209. The definitions section of the statute provides as follows: "(1) The term "person"

includes individuals, partnerships, corporations, and associations." 7 U.S.C. § 182(1).

The Complaint alleges that Hedrick was damaged by Defendant's violations of the PSA

(Complaint, ¶ 75). Consequently, Hedrick clearly possesses standing to maintain the PSA claim,

and Defendant's argument borders on the frivolous.

The same is true of Count II, a statutory claim under the AFPA, 7 U.S.C. § 2301 *et seq.*

The AFPA provides in pertinent part as follows:

> It shall be unlawful for any handler knowingly to engage or permit
> any employee or agent to engage in the following practices:
>
> (a) To coerce any **producer** in the exercise of his right to join and
> belong to or to refrain from joining or belonging to an association
> of producers, or to refuse to deal with any **producer** because of the
> exercise of his right to join and belong to such an association; or
>
> (b) To discriminate against any **producer** with respect to price,
> quantity, quality, or other terms of purchase, acquisition, or other
> handling of agricultural products because of his membership in or
> contract with an association of producers; or
>
> (c) To coerce or intimidate any **producer** to enter into, maintain,
> breach, cancel, or terminate a membership agreement or marketing
> contract with an association of producers or a contract with a
> handler; or
>
> (d) To pay or loan money, give anything of value, or offer any
> other inducement or reward to a **producer** for refusing to or
> ceasing to belong to an association of producers; or
>
> (e) To make false reports about the finances, management, or
> activities of associations of **producers** or handlers; or
>
> (f) To conspire, combine, agree, or arrange with any other person
> to do, or aid or abet the doing of, any act made unlawful by this
> chapter.

7 U.S.C. ¶ 2303 – Prohibited Practices (emphases added).

Each and every one of these subparagraphs (except subparagraph (f), which prohibits

conspiracies to do any of the substantive violations) applies the specified protections to a

"producer." The definition section of the statute, 7 U.S.C. ¶ 2302) defines a "producer" as "a person engaged in the production of agricultural products as a farmer . . . ." Thus, it is clear beyond peradventure that Congress expressly conferred standing on individuals just like Hedrick, who is a "farmer," to sue for violations of the AFPA, and Defendant's argument otherwise borders on the specious.

Finally, Hedrick has standing to sue for Defendant's negligent and intentional misrepresentations as he was the actual recipient of the misrepresentations, alleges that he relied upon them, and alleges he was damaged as a result. (See Complaint, ¶¶ 10, 38-39, 47-48, 68, 84-86, 88-91, 103, and 104.) Hedrick also alleges that Defendant's misrepresentations induced him to have Triple R enter into the BPAs with PPC. (Complaint, ¶¶ 38 & 47.) This is sufficient for standing. *See, e.g., Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1104-05, 2013 U.S. App. LEXIS 10185, 2013 WL 2159502 (9th Cir. 2013) (relying on *Kwikset Corp. v. Superior Court,* 246 P.3d 877, 890-891 (Cal. 2011). Those for whose guidance information is provided have standing to sue for negligence in the communication of that information. *See Barraza v. Bank of Am., N.A.,* 2012 U.S. Dist. LEXIS 196799, **10-11, 2012 WL 12886438 (W.D. Tex. 2012).

Defendant incorrectly asserts that Plaintiffs failed to plead "justifiable reliance." (MTD at 2, ¶ 6). The Complaint alleges (in ¶ 68): "Plaintiffs reasonably relied on the PPC's representations concerning the longevity of the relationship and the promises from PPC personnel that they would be placing chicks on his farm, to his detriment and did not know that the representations were false until PPC informed him that they would not be placing chicks on his farm and subsequently failed to provide chicks in November of 2016." Indeed, the standard Plaintiffs actually pleaded, "reasonable reliance," is legally a higher standard than "justifiable reliance," the standard PPC (erroneously) contends Plaintiffs should have pleaded, but did not.

*Field v. Mans*, 516 U.S. 59, 70-76 (1995). The Complaint therefore satisfies this element of the misrepresentation claim.

### III.   PLAINTIFFS' MISREPRESENTATION CLAIMS MEET THE REQUIREMENTS OF RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Although Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to allege fraud with particularity, it specifically provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant apparently does not place much stock in its argument that Plaintiffs have failed to meet this standard, as it devotes a single paragraph of its brief to this point. See Memo. in Supp. at 14, first full paragraph.

The inquiry of whether a complaint passes muster under Rule 9(b) is a fact-specific one. "Ultimately, whether a complaint satisfies Rule 9(b) is "a fact-specific inquiry," one that depends upon 'the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.' *[U.S. ex rel.] Bilotta [v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014). *See* K*ane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383, 2015 U.S. Dist. LEXIS 101778 **24-25 (case under the False Claims Act). The goal of Rule 9(b) is to provide fair notice of the claims against which the Defendant must defend. *Johns v. Eastman Chem. Co.*, 248 F. Supp. 3d 765, 771, (S.D. W.Va. 2017).

This case involves both affirmative misrepresentations by PPC, and material omissions and/or fraudulent concealments. "'[A] number of courts have held that Rule 9(b)'s particularity requirements are less formulaic with fraud claims based on omissions of material fact.' The rationale for this more relaxed standard is that a plaintiff cannot be required 'to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur[.]'" *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W.Va. 2014) (citations omitted).

Another purpose of the rule is to prevent plaintiffs from initiating unmeritorious fraud claims on the off-chance that they might use discovery to discover misrepresentations of which they had no pre-suit knowledge in order to extort a settlement from a defendant, so-called "strike suits." *Morris v. Wachovia Secs., Inc.*, 277 F. Supp. 2d 622, 645 (E.D. Va. 2003).

Thus, the Fourth Circuit holds that in considering whether dismissal of a complaint pursuant to Rule 9(b) is warranted, a court should hesitate to do so if it is satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts. *R.J. Reynolds Tobacco Co. v. S K Everhart, Inc.,* 2003 U.S. Dist. LEXIS 13440 (M.D. N.C. July 31, 2003). *See also R.J. Reynolds Tobacco Co. v. Mkt. Basket Food Stores, Inc.*, 2006 U.S. Dist. LEXIS 61927 (W.D. N.C Aug. 21, 2006).

"Thus, while mere incantation of the word 'fraud' is clearly insufficient, Rule 9(b) does not require a dissertation. Rather, a concise statement of "who, what, where, how and why" is sufficient to prevent the abuses that give rise to the rule." *Morris v. Wachovia Secs., Inc.*, *id.*

Plaintiffs' Complaint clearly satisfies this standard. The Complaint places Defendant on notice of the "who, what, where, how and why" of Defendant's misrepresentation allegations, omissions, and concealments. Stated another way, the Complaint ensures that defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and that Plaintiffs have substantial pre-discovery evidence of those facts.

For example, the Complaint pleads details of a misleading February 2016 "Estimated Cash Flow" PPC provided to Plaintiffs to induce them to continue to grow chickens for PPC. (Complaint, ¶¶ 51-52) In the case of this document, the "who" is PPC itself, the "what" is the misleading nature of the document, the "where" is the Triple R facility where Plaintiff Hedrick

received this document, the "how" and "why" are PPC's efforts to induce Plaintiffs to continue as part of the exploitive scheme on PPC's part.

Similarly, the author and recipients of all of the other false and misleading statements, and half-truths and omissions, alleged are PPC and Plaintiffs, respectively. The contents of the statements of these other statements are alleged in sufficient particularity to enable Defendant to prepare its defense.

Moreover, it is also evidenced from the Complaint that Plaintiffs possess substantial evidence of their claims such that this is not a "strike suit."

Thus, the Complaint satisfies Rule 9(b).

In any event, were the Court to conclude that any of Plaintiffs' misrepresentation allegations are pled with insufficient particularity, Plaintiffs should be granted leave to amend the complaint to do so. The courts hold that leave to amend to cure pleading deficiencies should be liberally granted. *See, e.g., Gray v. Walmart Stores, Inc.*, 2011 U.S. Dist. LEXIS 51155, 2011 WL 1831780 (E.D. N.C. May 12, 2011) (omitting extensive citations). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Leave to amend to cure deficiencies under Rule 9(b) is almost always granted. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)(citing *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (quoting 2A J. Moore & J. Lucas, Moore's Federal Practice, P 9.03 at 9-34 (2d ed. 1986)).

Accordingly, the Court should hold the Complaint sufficient under Rule 9(b). Alternatively, the Court should defer a final decision on this theory, and grant Plaintiffs leave to amend to cure any deficiencies it perceives in the allegations. *See White v. Pilgrim's Pride Corp.,* 2008 U.S. Dist. LEXIS 74793, 2008 WL 4471656 **11-12.

## IV.   PLAINTIFF TRIPLE R'S BREACH OF CONTRACT CLAIM (COUNT IV) IS NOT SUBJECT TO DISMISSAL

Plaintiffs' Count IV is a claim for breach of contract. This claim is legally valid and is not subject to dismissal.[4]

To establish a claim for breach of contract under West Virginia law, the elements are: (1) that a valid, enforceable contract exists; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result of a breach. *See Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (stating the four

---

[4] Defendant argues that "The PSA claims are barred by a release in the BPA." Motion to Dismiss, p. 2, ¶ 9. The Court should reject this contention. Even if Plaintiffs cannot recover damages arising from the misconduct PPC committed prior to March 16, 2012, *i.e.,* the date when the last BPA was executed, Plaintiffs still are entitled to introduce evidence of such actions as support for their claims post-dating that event. *See, e.g., Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1208 (affirming grant of injunction in favor of patentee relying in part on evidence pre-dating grant of patent; the court ruled: "[e]vidence of consumer confusion, harm to reputation, and loss of goodwill pre-dating the patent is, at the very least, circumstantial evidence demonstrating the possibility of identical harms once the patent issues."). This situation is akin to the use of evidence of actions pre-dating a statute of limitations as evidence supporting the claims that are timely. As one court recently explained:

> However, "allegations concerning data accesses that do not themselves constitute violations because they are barred by the statute of limitations still may be considered in assessing the plausibility of timely claims." *McDonough*, 799 F.3d at 931, 946 (8th Cir. 2015); *See also AMTRAK v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (stating that plaintiff may use pre-limitations-period acts as background evidence in support of a timely claim); *United States EPA v. Green Forest*, 921 F.2d 1394, 1409 (8th Cir. 1990) ("[T]here is no rule that automatically excludes evidence pre-dating a statute of limitations period.").

*Hedquist v. Walsh*, 2017 U.S. Dist. LEXIS 166564, **17 (D. Wyo. Mar. 13, 2017). Thus, the alleged release does not warrant dismissal of any of Plaintiffs' claims. And, the Court should be chary of carving out pieces of Plaintiffs' claims on this, or statute of limitations grounds, or any other grounds at this stage of the case before Plaintiffs have had a fair opportunity to conduct discovery (see discussion above).

elements to establish a breach of contract); *see also Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 749 (N.D.W. Va. 2012).

With respect to Triple R's breach of contract claim, the Complaint states a valid cause of action. According to the Complaint, Triple R entered into three successive agreements with Defendants: an initial 2007 Boiler Production Agreement (Complaint, ¶ 34); a 2009 BPA (Complaint, ¶ 44); and a final, 2012 BPA. (Complaint, ¶ 63).

Plaintiff Triple R performed its obligations under these agreements, according to the Complaint. (See, e.g., ¶¶ 35-37.) Moreover, it is apparent from other portions of the Complaint that Plaintiff complied with a whole host of onerous demands by Defendant to upgrade its facilities or make repairs, many of them of an arbitrary or capricious nature, thereby providing evidence of Plaintiffs' compliance and attempted compliance with the contracts. (See, e.g., ¶ 46.)

The Complaint alleges that Plaintiff Triple R was damaged by Defendant's breaches of the contracts. (Complaint, ¶ 95.)

Finally, the Complaint alleges that PPC violated the terms of the BPAs by violating by subjecting Hedrick and Triple R to retaliatory and unlawful treatment because of Hedrick's relationship with the Contract Poultry Growers Association of the Virginias. PPCs' additional breaches of the BPA include, but are not limited to: breaching its obligation to exert its best efforts in the process of growing chickens pursuant to paragraph H. (1) by not allowing or even offering to Plaintiff an opportunity to participate in PPC "Cost Improvement Program." Complaint, ¶ 64.

The Complaint accordingly alleges facts satisfying the four elements necessary to state a valid breach of contract claims under West Virginia law.

Defendant erroneously argues that Triple R terminated the 2012 Broiler Production Agreement (BPA) on October 3, 2016. *See* Pilgrim's MTD at 2, ¶ 3 and Exhibit B. However, a

careful reading of the email sent by Eric Hedrick on October 3, 2016 clearly shows that Triple R suggested that its relationship with PPC would end **after** the settlement of its last flock which ended up being on November 4, 2016, and **after** the 90-day termination notice requirement had elapsed, which would have been on January 1, 2017.

Hedrick and Triple R had reasonably expected that PPCs would finally help them when facing the prospect of losing the largest independently-owned broiler farm in West Virginia as a grower.  However, PPC hand-delivered a letter to Hedrick dated October 28, 2016 declaring that PPC was terminating the BPA, and did so  without providing the contractually required written notice of 90 days. On that date, PPC's picked up Triple R's last flock of chickens and trucked them away to its plant. The Complaint in this action was filed on October 25, 2016, that is, before the expiration of two years from the date of PPC's termination of the agreement.

Finally, this argument by Defendant treats the breach claim as though its sole factual predicate is Plaintiffs' October 3, 2016 email. This obviously is an anemic reading of the Complaint, which consists of 30 pages and 105 paragraphs of detailed allegations regarding the many ways in which Defendant breached their agreements with Plaintiffs, as well their covenants of good faith and fair dealing with Plaintiffs. (See, e.g., Complaint, ¶¶ 57-68.)

## V. PLAINTIFF TRIPLE R HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER WEST VIRGINIA LAW (COUNT V)

In West Virginia, a covenant of good faith and fair dealing is implied in every contract for the purpose of evaluating a party's performance of that contract.  *Spoor v. PHH Mortg. Corp.*, 2011 U.S. Dist. LEXIS 24952 *13, 2011 WL 883666 (N.D.W.Va., 2011); *Knapp v. American General Finance, Inc.*, 111 F. Supp. 2d 758, 767 (S.D. W. Va 2000); *Hoffmaster v. Guiffrida*, 630 F. Supp. 1289, 1290-91 (S.D. W. Va. 1986). While PPC correctly states that West Virginia law does not recognize an independent cause of action for a breach of the duty of good faith and

fair dealing separate and apart from a breach of contract claim, (*see Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005); *Highmark West Virginia Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007)), in the present case, PPC is guilty of breach of the BPA in multiple respects as articulated in detail above.  Furthermore, PPC has taken gross advantage of the one-sided nature of the BPA, and its position as the only processor with whom Plaintiff was able to do business, and forced upon Plaintiff arbitrary and unfair requirements, not required by the BPA nor even by reasonable business considerations to harass and encumber Plaintiff under financial burdens making it impossible for him reasonably to refuse their unlawful demands.  ¶¶ 57-62.  Indeed, PPC not only denied Plaintiff its rights and benefits under the BPA, but PPC also affirmatively sought to ruin Plaintiff as an example to any other growers in the Moorefield region who also have reason to complain about PPC's bad faith practices.

## VI.    PLAINTIFFS' AFPA, FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS ARE NOT TIME-BARRED

### A.    The AFPA Claim is Timely within the Applicable Two-Year Statute of Limitations

Defendant alleges that Count II, Plaintiffs' AFPA claim, should be dismissed for violating the applicable statute of limitations. MTD at 2, ¶ 8. Defendant is incorrect.

The statute of limitations under the AFPA is two years "after the cause of action accrued." The Complaint in this case was filed on October 25, 2018.

According to the Complaint, the Defendant made false statements to induce Plaintiffs to enter into contracts of adhesion to grow chickens for Defendant on his farm, and continued to materially mislead Plaintiffs about the financial viability of working as a grower for PPC.

Specifically, the Complaint alleges "[i]n late 2007, PPC contacted Hedrick about growing poultry for PPC. PPC personnel stated that upon its approval of Triple R's poultry facilities, PPC

22

would place birds in the facilities and would enter into a poultry growing arrangement with Hedrick for the production of broilers.   Defendant also promised Hedrick that as long as he grew a good bird, he would continue to receive placements of baby chicks from PPC.  Hedrick and Triple R entered into a 2007 Broiler Production Agreement (BPA) with PPC covering Plaintiffs' activities as growers for a five-year term from September 10, 2007 through September 10, 2012 (2007 BPA). (Complaint, ¶ 34) "[PPC's] representations that Hedrick would continue to receive chickens was the primary inducement for Hedrick to enter into the agreement with PPC as well as to expend funds to improve his chicken houses." (Complaint, ¶ 38)

The Complaint alleges as one specific example a document on PPC's letterhead titled an "Estimated Cash Flow" for a chicken house of 38,626 square feet, which would be roughly comparable to Plaintiffs' chicken houses. "This document represented that a grower could expect an average per flock payment from PPC of $97,741 if the grower used a 'tunnel fog' type ventilation system, and a payment of $100,164 if using a 'cool cell' system.  According to this document, the grower would gain a net return, less annual expenses, of $23,138 per flock for a tunnel fog system, and $24,265 for a cool cell system." (Complaint ¶ 49.)

Thus, the Complaint alleges a continuing pattern of misrepresentations by Defendant to Plaintiffs beginning in 2007 and continuing into 2016 and beyond. "The Defendant knowingly made, and continues to make, materially false representations, both written and oral, about future income, costs, expenses, company policies and working relationships to Plaintiffs, or concealed related material facts and information, including but not limited to, the "tournament system" and the inequities related thereto to accomplish this inducement, knowing that Plaintiffs were ignorant as to the falsity of these representations and that it would accept them as the truth and rely thereon to its own consequence and proximate injury." (Complaint ¶ 47.)

23

Moreover, Plaintiffs were not aware of the falsity of Defendant's representations "until PPC informed [them] that they would not be placing chicks on his farm and subsequently failed to provide chicks in November of 2016." (Complaint ¶ 68.)

Plaintiffs' October 25, 2018 Complaint therefore was filed within two years of when the AFPA cause of action accrued.

> Applying the common law discovery rule . . . courts view a claim as "accru[ing] . . . when the plaintiff knows both of the existence and the cause of his injury. As a practical matter, this common law rule "extends the statute of limitations by delaying the date on which it begins to run."

*Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1048 *Citations omitted; applying the common law discovery rule to extend the statute limitations under another congressionally-created cause of action, the Federal Tort Claims Act). In this case, Plaintiffs expressly pleaded that they did not discover their cause of action until November 2016 at the earliest. That timing likely is extended by the continuing nature of the violation, which, per the Complaint, continued up to the date of filing. Clearly, under these circumstances, the Complaint filed on October 25, 2018 was timely.

The complaint further alleges that Defendant fraudulently concealed its violations of the AFPA. "The Defendant has and continues to fraudulently conceal from said growers, including Plaintiffs, material facts regarding the detrimental effect to said growers, including Plaintiffs, resulting from the tournament system." (Complaint, ¶ 25; see also ¶ 47.)

"[T]ime bars in suits between private parties are **presumptively** subject to equitable tolling." *United States v. Kwai Fun Wong*, 135 S. Ct. (2015) (FTCA claim), citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990). Here, the Complaint shows that Plaintiffs' claim under the AFPA was equitably tolled by Defendant's fraudulent concealment.

At least some of Defendant's conduct in violation of the AFPA occurred no more than two years before the filing of the Complaint, and, therefore, Count II is not subject to dismissal

24

in its entirety on statute of limitations grounds. The question of when the statute of limitations began to run on individual violations of the AFPA is not one the Court should reach at the motion to dismiss stage. As District Court (and now Fourth Circuit) Judge Motz said in a case involving alleged violations of the Racketeer Influenced and Corrupt Organizations Act

> Although limitations may play a significant role later in this case, it is not dispositive of any claim at this point. Also, as plaintiffs argue, any decision on limitations grounds in this case will be fact-intensive, and the record as it currently exists simply is insufficient Firestone v. Firestone, 76 F.3d 1205, 1996 U.S. App. LEXIS 2376, 316 U.S. App. D.C. 152, 34 Fed. R. Serv. 3d (Callaghan) 1128.

*In re American Honda Motor Co., Dealerships Realtors Litig.*, 941 F. Supp. 528, 537 (D. Md. 1996).

Consistently with Judge Mott's decision in *American Honda Motor Co.*, other courts have held generally that dismissal on statute of limitations grounds from the face of a complaint is disfavored. As the D.C. Circuit explained in *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. YEAR):

> courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *See, e.g., Richards v. Mileski*, 213 U.S. App. D.C. 220, 662 F.2d 65, 73 (D.C. Cir. 1981); *Jones v. Rogers Memorial Hosp.*, 143 U.S. App. D.C. 51, 442 F.2d 773, 775 (D.C. Cir. 1971). In *Richards* we made clear that, because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred. *See Richards*, 662 F.2d at 73.

In summary, Count II is not beyond the applicable two-year statute of limitations and is not subject to dismissal on that ground.[5]

---

[5] PPCs correctly states that Count I under the PSA does not provide for the recovery of attorney fees; however Count II under the AFPA does.

**B.   Nor are the Intentional and Negligent Misrepresentation Claims by the Two-Year Statute of Limitations**

For the same reasons as just discussed in regard to Plaintiffs' AFPA claim, their intentional and negligent misrepresentation claims are not barred by the West Virginia two-year statute of limitations.

**VII.   *A FORTIORI*, PLAINTIFFS' AFPA CLAIM IS NOT BARRED BY THE APPLICABLE FOUR-YEAR STATUTE OF LIMITATIONS UNDER THE PSA**

The AFPA claim is timely under the applicable four-year statute of limitations for the same substantive reasons that the PSA claim is timely, as explained in section VI.A. above.[6] The Complaint alleges a continuing course of violations of the PSA involving coercive and deceptive conduct by PPC, which extended from 2007 until November 2016 and beyond. (Complaint, ¶¶ 34 and 68.) Paragraph 47 alleges that Defendant "continues to make" materially false representations, both written and oral, about future income, costs, expenses, company policies and working relationships to Plaintiffs," up to the present time, and "conceal[s] related material facts and information, up to the present." Id.

The Complaint alleges that in February 2016 Defendant provided Plaintiffs with a deceptive document titled "Estimated Cash Flow" for a chicken house of 38,626 square feet, which would be roughly comparable to Plaintiffs' chicken houses. (Complaint, ¶¶ 49-52.)  This misleading representation clearly is within the 4-year statute of limitations under the PSA. Thus, Count II is not subject to dismissal based on the statute of limitations.

Moreover, according to the allegations of the Complaint, Plaintiffs were not aware of the falsity of Defendant's representations "until PPC informed [them] that they would not be placing

---

[6] Congress did not provide for a statute of limitations when it enacted the PSA. Therefore, courts have applied the four-year statute of limitations of the Sherman Act found at 15 U.S.C. § 15(b). *See Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1460 (8th Cir. 1995); *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004).

chicks on his farm and subsequently failed to provide chicks in November of 2016. " (Complaint ¶ 68, 47.)

It may be arguable that some of the numerous violations of the PSA alleged in the Complaint lie outside the statute of limitations. Plaintiffs respectfully submit that the Court should not decide which actions might, or might not, be beyond the statute on the cold paper record at the motion to dismiss stage.

First, as discussed above, the Complaint contains allegations that Plaintiffs' claims under the PSA were equitably tolled by Defendant's fraudulent misrepresentations and concealment.

Second, the Complaint alleges in effect a continuing violation of the PSA. Under analogous antitrust statutes, "[a] continuing antitrust violation is one in which the Plaintiffs' interests are repeatedly invaded." *Varner v. Peterson Farms*, 371 F.3d at 1019, citing *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)). ""When a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the Defendant." *Id., citing Barnosky Oils, Inc. v. Union Oil Co. of California*, 665 F.2d 74, 81 (6th Cir. 1981). Every new and independent action by PPC that inflicted accumulating injury on Plaintiffs "restarted" the running of the 4-year statute of limitations. *Id.*

Consequently, the PSA claim is timely.

**CONCLUSION**

For the reasons stated above, the Court should deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted this 8th day of March, 2019

By:      _____/s/ Keith Lively_____
         Keith Lively, Esq. (WV Bar #8919)
         Doyle, Barlow & Mazard, PLLC
         1010 Temple Street
         Hinton, WV 25951
         703.862.0215 (tel)
         202.589.1819 (fax)
         klively@dbmlawgroup.com

By:      Government Accountability Project, Inc.
         Jack A. Kolar, Esq. (*admitted pro hac vice*)
         Jackk@whistleblower.org
         (202) 457-0034, ext. 197
         Karen J, Gray, Esq. *(admitted pro hac vice)*
         Kareng@whistleblower.org
         (202) 457-0034, ext. 122
         Amanda Hitt, Esq. *(admitted pro hac vice)*
         Amandah@whistleblower.org
         (202) 457-0034, ext. 159.
         1612 K Street, NW, Suite 1100
         Washington, DC  20006

         J. Dudley Butler, Esq.
         *(admitted pro hac vice)*
         Butler Farm & Ranch Law Group, PLLC
         499-A Breakwater Dr.
         Benton, MS  39039
         (662) 673-0091 (tel)
         jdb@farmandranchlaw.com

*ATTORNEYS FOR PLAINTIFF TRIPLE R RANCH and ERIC HEDRICK*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and by the same means served the following parties:

Peter G. Zurbuch (WV Bar #5765)
BUSCH, ZURBUCH & THOMPSON, PLLC
P.O. Box 1819
Elkins, WV 26241
Tel: (304) 636-3560
Fax: (304) 636-2290
Email: pzurbuch@bztlaw.com

Clayton E. Bailey (*Admitted Pro Hac Vice*)
Ben Stewart *(Admitted Pro Hac Vice)*
BAILEY BRAUER PLLC
Campbell Centre I
8350 N. Central Expressway, Suite 206
Dallas, Texas 75206
Tel: (214) 360-7433
Fax: (214) 360-7435
Email: cbailey@baileybrauer.com

By:      /s/ Keith Lively
         Keith Lively (WV Bar #8919)
         DOYLE, BARLOW & MAZARD PLLC
         1110 Vermont Ave., N.W., Suite 715
         Washington, DC  20005
         202.589.1834 (tel)
         202.589.1819 (fax)
         klively@dbmlawgroup.com

29