**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION**

| | | |
|---|---|---|
| **TRIPLE R RANCH, LLC and** | § | |
| **ERIC HEDRICK,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CA No.  2:18-cv-109 (Bailey)** |
| **vs.** | § | |
| | § | |
| **PILGRIM'S PRIDE CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Pilgrim's Pride Corporation ("Pilgrim's") files this Reply in support of its Motion to Dismiss and accompanying Memorandum of Law in support thereof (ECF 19 & 19-5), and states the following:

## I.        PRELIMINARY STATEMENT

Plaintiffs' Opposition to Defendant's Motion to Dismiss (ECF 26) ("Opposition") supports their Complaint like a noose around a hanged man's neck.  Besides agreeing certain causes of action and remedies should be dismissed with prejudice and other claims are limited in scope based on a release in the 2012 BPA, Plaintiffs wait until the twenty-first page of the Opposition to address the evidence affixed to Pilgrim's Motion to Dismiss showing that Plaintiffs, as opposed to Pilgrim's, terminated the 2012 BPA and instructed Pilgrim's not to deliver any additional batches of chicks because Triple R was "closing [its] doors."  And when Plaintiffs finally get around to acknowledging and addressing the evidence eviscerating their claims, Plaintiffs use their Opposition to raise new allegations that are not included in the Complaint in an effort to distort and contradict the unambiguous statements in the documents.  But Plaintiffs cannot use their brief to supplement their Complaint.

1

As demonstrated in Pilgrim's opening papers and this Reply, this case should never have been filed. Accordingly, the Court should dismiss each of the Complaint's six causes of action because Plaintiffs either admit the claims are barred or because Plaintiffs fail to allege facts necessary to maintain the claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.      REPLY

### A.      Plaintiffs expressly and implicitly admit certain causes of action are barred.

The Court should dismiss with prejudice those claims Plaintiffs expressly concede are barred as a matter of law. For instance, Plaintiffs admit Plaintiff Hedrick lacks standing to maintain his breach of contract claim. (Opposition ("Opp.") at 13.) Similarly, Plaintiffs concede Plaintiff Hedrick's good faith and fair dealing claim fails as a matter of law. (*Id.*) Finally, Plaintiffs also agree they cannot recover attorney fees based on their PSA claim. (*Id.* at 25 n. 5.) In light of these concessions, the Court should dismiss with prejudice each of these claims and remedies.

Next, Plaintiffs essentially concede the release in the 2012 BPA bars Plaintiff Triple R's breach of contract, good faith and fair dealing, intentional and negligent misrepresentation, PSA, and AFPA claims to the extent they are based on acts or omissions occurring before the 2012 BPA went into effect on March 16, 2012. In their Opposition, Plaintiff Triple R does *not* contest that the release included in the 2012 BPA[1] is enforceable and covers the aforementioned causes of action. (*See generally* Opp.) In fact, Plaintiffs admit the release bars their claims based on events prior to March 16, 2012. (*See id.* at 19 n. 4.) According to Plaintiffs, they merely request to be allowed to "introduce evidence of such actions as support for their claims post-dating that event."[2] (*Id.*) Consequently, to the extent either or both Plaintiffs have pleaded viable causes of action,

---

[1] *See* Pilgrim's Motion to Dismiss [ECF 19] ("Mot. to Dismiss") at Exhibit ("Ex.") A [ECF 19-1], § H.10.
[2] Pilgrim's disputes Plaintiffs' argument, but Pilgrim's Motion to Dismiss is not the procedural vehicle to argue over the admissibility of evidence.

which Pilgrim's denies, the Court should preclude those causes of action to the extent they are based on events occurring before March 16, 2012.

**B.     Plaintiff Hedrick lacks standing to maintain the causes of action against Pilgrim's he does not expressly concede are barred.**

Despite conceding he did not sign the 2012 BPA and thus lacks standing to sue Pilgrim's for breach of contract and good faith and fair dealing (Opp. at 13), Plaintiff Hedrick contends he has standing to maintain his federal statutory claims and state law intentional and negligent misrepresentation causes of action.  (Opp. at 13-16.)  Plaintiff Hedrick, however, is wrong for numerous reasons.

First, Plaintiff Hedrick's claim he may sue Pilgrim's under the PSA and AFPA is fundamentally flawed because he fails to acknowledge that his limited liability company, Triple R, is the named party under the 2012 BPA with Pilgrim's (Mot. to Dismiss at Ex. A), and controlling West Virginia statutory law establishes that a limited liability company is separate and distinct from its members.  W. Va. Code § 31B-2-201.  Accordingly, no matter how much gloss Plaintiff Hedrick may apply to support his assertion that he is a "person" under PSA §§ 182(1) and 209(a), or a "producer" under AFPA §§ 2302(4) and 2303, he cannot cover up the fact that Plaintiff Triple R is the party raising broilers for purposes of the PSA and AFPA.  Thus, Triple R, not Hedrick, has standing to assert claims for any purported violations.

Second, Plaintiff Hedrick fails to cite, and Pilgrim's could not find, any case law holding that a member of a limited liability company has standing to sue under the PSA or AFPA.

Third, Plaintiff Hedrick lacks standing to sue under the PSA and AFPA because he falls outside the zone of interests to be protected under both statutes.  As Plaintiffs concede in their Response, the "'chief evil'" Congress sought to address in the PSA was the "'monopolistic practices of the packers, 'enabling them unduly and arbitrarily to lower prices *to the shipper, who*

3

*sells*, and unduly and arbitrarily to increase the price to the consumer, who buys.'"  (Opp. at 11 (citations omitted) (emphasis added).)  Here, Plaintiff Hedrick is not the shipper who is selling. Rather, the shipper who is selling in this case is Triple R.  (*See* Mot. to Dismiss at Ex. A.)

Similarly, as discussed on page 12 of its opening brief, Congress enacted the AFPA in 1968 to "protect[] the right of farmers and other producers of agricultural commodities to join cooperative associations through which to market their products," and "to rectify a perceived imbalance in bargaining position between producers and processors of such products."  *Mich. Canners and Freezers Ass'n, Inc. v. Agric. Mktg. and Bargaining Bd.*, 467 U.S. 461, 464 (1984). The AFPA makes it unlawful for handlers to knowingly "coerce any producer in the exercise of his right to . . . belong to . . . an association of producers," 7 U.S.C. § 2303(a), or to knowingly "coerce or intimidate any producer to . . . cancel, or terminate a membership in or contract with an association of producers[.]" 7 U.S.C. § 2303(c).  Here, Plaintiff Hedrick is not the producer of agricultural commodities.  Rather, it is Triple R that is the producer of broilers for Pilgrim's.  (*See* Mot. to Dismiss at Ex. A.)

On the other hand, to interpret the PSA and AFPA in the manner Plaintiff Hedrick proposes would violate one of the organizing principles of West Virginia limited liability company law— i.e., the separation that exists between a limited liability company and its members.  W. Va. Code § 31B-2-201.  Moreover, Plaintiff Hedrick's broad interpretation of the PSA and AFPA would improperly expand the scope of potential litigants and open the floodgates of litigation—a result at least one other court has refused to allow.  *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 653 F. Supp. 2d 669, 671-74 (N.D. Tex. 2009) (holding a city is not a "person" under PSA §§ 182(1) and 209(a) and thus dismissing the city's PSA § 192 claims).  Indeed, if the Court were to

4

accept Plaintiff Hedrick's interpretation, virtually any person working on or providing services to a party under contract with a chicken company to raise broilers would have standing to sue.

Plaintiff Hedrick's interpretation is also belied by the Complaint's allegations, which show he has not been injured directly and independently of Triple R.  Indeed, the Complaint's allegations upon which the PSA and AFPA claims are based relate solely to Pilgrim's purported acts toward Triple R.  (*See, e.g.,* Compl. ¶¶ 57 (furnishing "substandard food for the chicks"); 58 (furnishing "diseased chicks"); 59 (failing "to provide needed medication for the chicks"); 60 ("delay in weighing the birds that resulted in reduced live weight"); 61 (imposing "arbitrary and unjustified requirements on Plaintiff under threat of refusing to furnish chickens unless additional expenditures were made"); 62 ("PPC did not abide by its own terms imposed in the Agreement"); 69 ("Then Hedrick made the fatal mistake of speaking out against the Companies at the Department of Justice/Department of Agriculture Town Hall Meeting on Capitol Hill in DC in 2010.  After this, settlements started going down drastically.  Triple R began losing anywhere from $17K to $30K a flock"); 69 ("Triple R had to refinance to be able to keep up with its mortgage payments and operating expenses"); 69 ("After nine years of providing grow-out services for PPC, Triple R owed more than when it first started. Triple R was left approximately $2.3M in debt.  This debt has continued to increase").)

Plaintiff Hedrick's failure to allege any direct injury independent of Triple R's purported injuries similarly dooms his intentional and negligent misrepresentation causes of action pleaded in the Complaint.  The only way Plaintiff Hedrick may avoid the limitations of the limited liability company member standing rule is to allege facts showing he has been injured directly and independently of Triple R.  *See Shell Petroleum, NV v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic

injury resulting from a wrong to the corporation"); *see also Woods View II, LLC v. Kitsap Cty.*, 484 F. App'x 160 (9th Cir. 2012) (applying *Shell* to members of a limited liability company). Here, the Complaint's allegations show Plaintiff Hedrick's loss derives from his membership in Triple R.   Indeed, he fails to allege facts showing he suffered an injury distinct from those of any other member of Triple R, such as his spouse.  (*See generally* Compl.)  Accordingly, just because Plaintiff Hedrick may have been "the actual recipient of the misrepresentations" and allegedly "relied on them" does not afford him standing, particularly since he received the purported representations in his role as a member of Triple R.  (*See* Opp. at 15.)

        Finally, Plaintiffs fail to provide adequate case law permitting the Court to rule contrary to West Virginia statutory law expressly recognizing a distinction between Triple R and Plaintiff Hedrick.  *See* W. Va. Code § 31B-2-201.  For instance, Plaintiffs rely on a U.S. Ninth Circuit Court of Appeals opinion—*Hinojos v. Kohl's Corporation*—and an opinion from the United States District Court for the Western District of Texas—*Barraza v. Bank of America, N.A.*—for the proposition that Plaintiff Hedrick has standing to sue Pilgrim's for alleged intentional and negligent misrepresentations.  (Opp. at 15.)  However, neither *Hinojos* nor *Barraza* concern, let alone address, a limited liability company's member's right to sue.  *See generally Hinojos*, 718 F.3d 1098 (9th Cir. 2013); *Barraza*, No. EP-12-CV-35-KC, 2012 WL 12886438 (W.D. Tex. Aug. 13, 2012).   Instead, both opinions concern individual plaintiffs' rights to seek redress for direct injuries they incurred.  *See Hinojos*, 718 F.3d at 1103-1105 (purchaser of good from department store had standing to sue under California state statute prohibiting unfair advertisement of goods as being marked down from a fictitious "original" or "regular price"); *Barraza*, 2012 WL 12886438 at * 3-6 (determining spouse had standing to sue mortgagor for breach of contract and

negligent misrepresentation because she signed a deed of trust).   Therefore, neither case is instructive because they are factually inapposite.

For all these reasons, the Court should dismiss with prejudice all of Plaintiff Hedrick's causes of action pleaded against Pilgrim's.

**C.     The Complaint's allegations and the extrinsic evidence central to Plaintiff Triple R's breach of contract cause of action render the claim unviable as a matter of law.**

As demonstrated in Pilgrim's opening brief, Plaintiff Triple R's contract claim fails because the contemporaneous documents gut Triple R's allegation that Pilgrim's breached the 2012 BPA by terminating the contract.  (Memorandum of Law in Support of Defendant's Motion to Dismiss [ECF 19-5] ("Mem.") at 10-11.)  Instead, the parties' communications (which Plaintiffs do not dispute are properly before the Court) show Triple R (1) terminated the 2012 BPA and (2) instructed Pilgrim's not to deliver "any more chicks after this flock we have now is finished. We are closing our doors."  (Mot. to Dismiss at Ex. B [ECF 19-2].)

Recognizing that Plaintiff Triple R's breach of contract claim is defeated by the parties' written correspondence, *see Tinsley v. Onewest Bank, FSB,* 4 F. Supp. 3d 805, 819 (S.D. W.Va. 2014) (recognizing that a document prevails over a complaint's contradictory bare allegations), Triple R now uses its Opposition to recast its breach of contract claim by asserting allegations that are not pleaded in the Complaint or are not plausible.  (*See* Opp. at 20-21.)  For instance, Triple R contends Pilgrim's breached the 2012 BPA by (1) purportedly retaliating in response to Hedrick's membership in the CPGAV and (2) failing to "exert its best efforts in the process of growing chickens pursuant to paragraph H. (1) [sic] by not allowing or even offering to Plaintiff an opportunity to participate in PPC [sic] 'Cost Improvement Program.'"  (Opp. at 20.)  But Count IV of the Complaint, which concerns the breach of contract claim, does not rely on these allegations as the basis for the breach of contract claim.  (Compl ¶¶ 92-95.)  Rather, the sole

allegation pleaded in support of Triple R's breach of contract claim is set forth in Complaint paragraph 93, which states "[t]he Defendant deliberately and maliciously refused to honor the requirements of first paragraph section F of its BPA to continue to place birds on the Plaintiff's farm." (Compl. ¶ 93.) Accordingly, the Court should disregard the new allegations in the Opposition that are not pleaded in the Complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013); *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 879 (S.D. W.Va. 2014); *Hess v. Hoke*, No. 10-192, 2011 WL 4433565, at * 7 (N.D. W.Va. Aug. 31, 2011), *report and recommendation adopted*, No. 10-192, 2011 WL 4433590 (N.D. W.Va. Sept. 21, 2011).

Further, Triple R's new allegation that Pilgrim's breached paragraph H.1 of the 2012 BPA by "not allowing or even offering" to allow Triple R to "participate in" the Cost Improvement Program is not plausible because the contemporaneous documents show Triple R, *not Pilgrim's*, terminated the contract. (Mot. to Dismiss at Ex. B.) As a result of Triple R providing written notice of termination to Pilgrim's, the following clause in the 2012 BPA's termination provision was never triggered: "Except for cause or economic necessity, [Pilgrim's] *will not terminate this Agreement without first requiring [Triple R] to follow the 'Cost Improvement Program*' as described in Exhibit B." (*See* Mot. to Dismiss at Ex. A, § D (emphasis added).) Further, the Complaint fails to show that Triple R was ever a candidate to be enrolled in the Cost Improvement Program or show how Pilgrim's breached the 2012 BPA by not allowing Triple R to participate in the Cost Improvement Program. (*See generally* Compl.)

Finally, the Court should disregard Plaintiff Triple R's new allegations on pages 20-21 of the Opposition seeking to add color to the parties' unambiguous correspondence demonstrating Triple R terminated the 2012 BPA and instructed Pilgrim's to no longer deliver chicks to Triple R. (*See, e.g.*, Opp. at 21 (contending the October 3, 2016 email "clearly shows that Triple R

suggested that its relationship with PPC would end **after** the settlement of its last flock which ended up being on November 4, 2016, and **after** the 90-day termination notice requirements had elapsed, which would have been on January 1, 2017" (emphasis in original), *id.* ("Hedrick and Triple R had reasonably expected that PPCs [sic] would finally help them when facing the prospect of losing the largest independently-owned broiler farm in West Virginia as a grower"); *id.* (alleging Pilgrim's "picked up Triple R's last flock of chickens and trucked them away to its plant" on October 28, 2016).)

Disregarding these new assertions in the Opposition is necessary because these allegations are not included in the Complaint, and Triple R has not sought leave to amend the live pleading. *See Haley*, 738 F.3d at 116; *Imagine Medispa, LLC*, 999 F. Supp. 2d at 879; *Hess*, 2011 WL 4433565, at * 7.  Further, some of the allegations are implausible because they are contradicted by the parties' correspondence.  (*Compare* Opp. at 21 ("However, PPC hand-delivered a letter to Hedrick dated October 28, 2016 declaring that *PPC was terminating the BPA, and did so without providing the contractually required written notice of 90 days*") (emphasis added) *with* Mot. to Dismiss at Ex. D [ECF 19-4] ("Pilgrim's accepts Triple R Ranch LLC's decision to terminate the Agreement.  Additionally, Pilgrim's waives its right to receive 90-days' notice of termination from Triple R Ranch LLC.  Accordingly, per Triple R Ranch LLC's representation that it is 'closing [its] doors,' no further chicks will be delivered to the farm's poultry houses now that the current flock has been removed from processing").)

For all these reasons, as well as those raised in Pilgrim's opening papers, Triple R's breach of contract claim should be dismissed.[3]

---

[3] As demonstrated in Pilgrim's opening papers, the Complaint's allegations, coupled with controlling legal authority, demonstrate Triple R's good faith and fair dealing claim is barred as a matter of law because it is not a stand-alone claim and the underlying breach of contract claim is not viable as a matter of law. (Mem. at 11.)  Therefore, the Court should also dismiss with prejudice Triple R's bad faith claim.

**D.      Plaintiffs' misrepresentation claims fail to pass muster under Federal Rule of Civil Procedure 9(b).**

Plaintiffs' Opposition fails to demonstrate their intentional and negligent misrepresentation claims satisfy the particularity requirements of Rule 9(b).  The Fourth Circuit has explained that "the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby."  *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013).  These requirements "provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all facts are learned only following discovery, and protect defendants' goodwill and reputation."  *Id.*

Here, Plaintiffs' Opposition never addresses the actual allegations pleaded as support for the Complaint's intentional and negligent misrepresentation claims.  (*See* Opp. 16-18.)  If they had, they must concede Rule 9(b)'s particularity requirements have not been met.  Plaintiffs' misrepresentation claims are alleged in Count VI of the Complaint and state:

> 103.    PPC represented to Hedrick that they would not place birds on Plaintiffs' farm because Hedrick had grower management problems.  PPC's representations regarding Plaintiffs' so-called grower management problems performance [sic] were negligently, willfully and recklessly prepared and presented and were material and intended to show that the Plaintiffs' the [sic] management problems were a true, correct, and fair analysis.

(Compl. ¶ 103; *see also* ¶¶ 86-89.)

These allegations do not specifically identify the speaker, when the statement was made, where the statement was made or what the speaker obtained thereby.  In fact, the Complaint fails to explain how the contents of the representation are false, particularly since Exhibits B through D affixed to Pilgrim's Motion to Dismiss show Triple R terminated the 2012 BPA and instructed Pilgrim's not to deliver chicks to the farm after the current flock was removed.

Additionally, even if the Court considers the other references to misrepresentations purportedly made by Pilgrim's alleged in the Complaint that do not serve as the basis for Plaintiffs misrepresentation claims in Count VI, those allegations do not satisfy Rule 9(b).  For instance, Plaintiffs' allegations relating to the alleged misleading February 2016 "Estimated Cash Flow" document (Compl. ¶¶ 49-52) do not identify the speaker or what the speaker obtained by the alleged misrepresentation.  Further, Plaintiffs fail to identify the contents of the false statement.  As Plaintiffs admit, the cash flow is an estimate or projection.  Further, the "Estimated Cash Flow" concerns "tunnel fog" and "cool cell" poultry houses, but the Complaint does not allege Triple R has either of these types of poultry houses.  (Compare Compl. ¶ 1 *with* ¶ 49.)  Finally, contrary to Plaintiffs' representations in the Opposition, the Complaint does not identify the place where the alleged misrepresentation occurred.  (*Compare* Compl. *with* Opp. at 17.)

 Similarly, Plaintiffs' allegations are insufficient under Rule 9(b) to the extent they allege Pilgrim's represented to Plaintiff Hedrick "in late 2006" and "late 2007" "that as long as he grew good birds, he would continue to receive placements of baby chicks from PPC." (Compl. ¶¶ 34, 83.)  With respect to these allegations, Plaintiffs neglect to plead the identity of the particular speaker, the particular time when the misrepresentation was made, or the particular place where the speaker made the misrepresentation.  (*See id.*)   More importantly, Plaintiffs fail to identify how the statement was false, particularly since Pilgrim's provided Triple R with chicks until Triple R provided Pilgrim's with written notice of termination of the 2012 BPA on October 3, 2016.

In sum, the misrepresentation claims fail to satisfy Rule 9(b) and should be dismissed.

**E.   Because it appears on the face of the Complaint that the limitations period has run, Plaintiffs' AFPA and intentional and negligent misrepresentation claims are barred.**

Plaintiffs' Oppositions fails to provide a sufficient reason for the Court to refuse to dismiss Plaintiffs' AFPA and misrepresentation claims based on their respective two-year limitations

periods.  First, contrary to Plaintiffs' arguments on page 25 of their Opposition, the Court may dismiss the AFPA and misrepresentations claims based on a statute of limitations defense when the face of the Complaint shows the limitations period has run.  *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005); *Johnston v. Berryhill*, No. 1:17-CV-15, 2018 WL 4677870, at * 2 (N.D. W.Va. Jan. 3, 2018).

Second, Plaintiffs' AFPA claims are tied to Pilgrim's alleged retaliatory conduct, which Plaintiffs do not dispute occurred before October 25, 2016.  (*See* Compl. ¶¶ 54-61, 103; *see generally* Opp.)  And Exhibit B attached to Pilgrim's pending motion shows Triple R provided Pilgrim's with notice of termination by email dated October 3, 2016, and instructed Pilgrim's not to deliver another flock of poultry because Triple R was "closing [its] doors."

Third, because Plaintiffs know their AFPA claims are time-barred, they seek solace under the discovery rule and fraudulent concealment doctrine.  (Opp. at 24.)  But neither rule applies because Plaintiffs never reference the discovery rule or the fraudulent concealment doctrine in the Complaint, let alone allege facts sufficient to support the application of these tolling doctrines.[4] (*See generally* Compl.)  Instead, the Complaint's allegations show that Pilgrim's alleged misconduct was openly obvious to a reasonable person and not concealed.  Given the nature of the retaliatory conduct (e.g., the alleged delivery of poor quality inputs, withholding of medicine, and the improper weighing of the chickens) and their purported immediate impact on Triple R's

---

[4] Although the fraudulent concealment tolling doctrine is to be read into every federal statute of limitation, Plaintiffs must allege that (1) Pilgrim's fraudulently concealed facts that are the basis of Plaintiffs' claims and (2) Plaintiffs failed to discover those facts within the statutory period (3) despite the exercise of due diligence.  *Supermarkets of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995).  Further, fraudulent concealment must be pleaded with particularity under Rule 9(b); thus, Plaintiffs must allege the circumstances of the how, when, and in what manner Pilgrim's fraudulently concealed its alleged wrongdoing from Plaintiffs.  *See, e.g., Mullinax v. Radian Gty. Inc.*, 311 F. Supp.2d 474, 488-499 (M.D.N.C. Mar. 30, 2004).  Plaintiffs did not invoke this doctrine because the aforementioned elements are not pleaded, let alone with particularity.

settlement payments after a flock was removed for processing, Plaintiffs knew, or by the exercise of reasonable diligence, should have known Triple R was injured, the identity of the wrongdoer, and that the conduct of that wrongdoer had a causal relation to the injury. (*See* Compl. 56-61, 69.) In fact, Plaintiffs' receipt of the "Estimated Cash Flow" put Plaintiffs on notice by "February 2016" that something was wrong because, according to Plaintiffs, Triple R earned far less revenues than those projected by Pilgrim's in its forecast for a "chicken house of 38,626 square feet, which would be roughly comparable to Plaintiffs' chicken houses." (*Id.* ¶ 49.)

Further, the Complaint's allegations show Plaintiff Hedrick has regularly complained about and been frustrated with Pilgrim's since 2007. (*Id.* ¶ 53.) Additionally, in 2008, he joined and served as a leader in the CPGAV in order to promote Triple R's interests and welfare. (*Id.* ¶¶ 54-55.) And by December 2010, he was speaking in Washington D.C. about the "problems and abuses with integration in the chicken growing industry." (*Id.* ¶ 56.) In fact, Plaintiffs allege Plaintiff Hedrick has even "appeared in several documentaries about the deplorable plight of broiler growers." (Compl. ¶ 69.) Accordingly, Plaintiffs' complaints about Pilgrim's supposed unfair treatment were well known to them and not concealed.

But there is more. Plaintiffs were certainly aware of their own actions, such as preparing and sending an email to Pilgrim's on October 3, 2016 providing written notice of termination and instructing Pilgrim's not to deliver any further chickens because Triple R was "closing [its] doors." (*See* Mot. to Dismiss Ex. B-C [ECF 19-2 & 19-3].)

Given the nature of the conduct, the alleged impact of the conduct, and the other allegations in the Complaint, neither the discovery rule nor the fraudulent concealment doctrine apply here. Hence, the Court should hold Plaintiffs' AFPA claim to be time barred.

Indeed, for these same reasons, Plaintiffs' intentional and negligent misrepresentation claims are barred. The Complaint is devoid of any plausible allegations of misrepresentations occurring after October 25, 2016. In fact, Plaintiffs' misrepresentation claims are moored to events surrounding the conclusion of Triple R's poultry growing arrangement with Pilgrim's. (Compl ¶¶ 84-89.) But Exhibit B establishes Plaintiffs sent the email to Pilgrim's providing written notice of termination and instructing the company to no longer deliver chicks on October 3, 2016.

Because the face of the Complaint and Exhibit B show Plaintiffs' claims are barred by limitations, the AFPA and misrepresentation claims should be dismissed with prejudice.

**F.    The Complaint fails to allege a plausible violation of PSA § 192(a) and (b) for numerous reasons; hence, the claim should be dismissed.**

As Pilgrim's opening papers demonstrate, the Court has numerous independent bases available for dismissing Plaintiffs' PSA claims. (*See* Mem. at 15-21.) In response, Plaintiffs' Opposition either fails to dispute many of Pilgrim's arguments or asserts illogical and inconsistent positions. In any event, and regardless of whether the Court revisits its prior decision holding harm to competition is unnecessary to prevail under subsections (a) and (b), the Court should dismiss with prejudice Plaintiffs' PSA § 192 claims.

**1.    Plaintiffs' Opposition shows why the Court should revisit the issue and now hold Plaintiffs must show harm to competition in this case.**

Plaintiffs' Opposition itself demonstrates why the Court should revisit[5] its prior decision in the *M&M Poultry* case holding that a successful plaintiff is not required to plead and prove harm to competition under PSA § 192(a) and (b).

---

[5] Without citation to any legal authority, Plaintiffs contend Pilgrim's request that the Court revisit its prior opinion in *M&M Poultry* is analogous to an untimely motion for reconsideration that should have been filed in the *M&M Poultry* case. (Opp. at 6.) But contrary to Plaintiffs' position, the Court has the power to revisit and change prior decisions of its own in any circumstance. This even includes situations, unlike here, where the law of the case doctrine applies. *See Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983).

First, Plaintiffs' Opposition does not dispute that all three branches of the federal government have each acted since the *M&M Poultry* opinion to support an interpretation of PSA § 192(a) and (b) that requires a prevailing plaintiff to show harm to competition or a likelihood thereof. (*Compare* Mem. at 16-18 *with* Opp. at 7-9.) While Plaintiffs may attempt to down-play the significance of each branch's activities (Opp. at 8-9), Plaintiffs cannot avoid acknowledging the executive, legislative, and judicial branches acted uniformly to either reconfirm the rule that anticompetitive harm must be shown under PSA § 192(a) and (b) or to prevent an attempt to roll-back this well-established rule adopted by every federal circuit court of appeals to address this precise issue.

Next, Plaintiffs' Opposition does not present any recent legal authorities supporting the Court's interpretation of the statute, which strips-out the harm to competition requirement.[6]

Third, the hypocrisy of Plaintiffs' arguments in the Opposition should lead the Court to revisit its prior opinion and hold that Plaintiffs must plead harm to competition in order to bring consistency to the statute. Plaintiffs' inconsistent arguments are reflected in at least two instances. First, in order to avoid pleading the facts necessary to show Pilgrim's alleged conduct harmed competition under a rule of reason analysis (which Plaintiffs cannot do), Plaintiffs assert "The PSA is Not an Antitrust Statute." (Opp. at 6.) But, on the other hand, when Plaintiffs seek the benefits of a lengthy four-year limitations period, Plaintiffs analogize PSA § 192(a) and (b) to the Sherman

---

[6] On the other hand, Plaintiffs cite two opinions from South Dakota and Texas—*Schumacher v. Tyson Fresh Meats, Inc.* and *White v. Pilgrim's Pride Corporation*—for the proposition that other district courts have likewise determined that PSA § 192(a) and (b) do not require anticompetitive harm or a likelihood thereof. (Opp. at 10.) However, Plaintiffs fail to acknowledge that both the *Schumacher* and *White* opinions pre-date Eighth and Fifth Circuit opinions either recognizing or holding that harm to competition must be shown under subsections (a) and (b). *See Org. of Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 457 (8th Cir. 2018) and *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355 (5th Cir. 2009). The overruling of the *Schumacher* and *White* holdings supports Pilgrim's position.

Act in order to claim that a four-year statute of limitations applies.  (Opp. 26 n. 6.)  Similarly, while on one hand claiming the PSA is not an antitrust statute, Plaintiffs simultaneously rely on the antitrust statutes' continuing injury doctrine to argue that their PSA claims are not time-barred. (Opp. 27.)  Plaintiffs' arguments are inconsistent and illogical.  PSA § 192(a) and (b) either has an antitrust backbone or it does not.  PSA § 192(a) and (b) cannot be the equivalent of the Sherman Act for some purposes, but not others.[7]  In short, Plaintiffs cannot have their cake and eat it too.

### 2.      The Complaint fails to show Pilgrim's harmed competition.

After determining Plaintiffs must plead harm to competition[8], the Court may quickly dispose of Plaintiffs' PSA claims because the Complaint fails to plead facts showing Pilgrim's alleged conduct was anticompetitive.  As demonstrated in Pilgrim's opening papers, the rule of reason applies to Plaintiffs' subsection (a) and (b) claims.  (Mem. at 18-21.)  Accordingly, Plaintiffs must plead a relevant market, show that Pilgrim's has "market power" within the relevant market, and explain how Pilgrim's—given its role in the relevant market—could harm competition based on the alleged misconduct.  (*Id.*)

Plaintiffs' Opposition fails to address most of Pilgrim's arguments.  For instance, Plaintiffs fail to cite any facts in the Complaint showing what the product and geographic market is in this

---

[7] In their Opposition, Plaintiffs contend the Court should not certify an interlocutory appeal under 28 U.S.C. § 1292(b) if the Court remains convinced Plaintiffs are not required to plead and prove harm to competition under PSA § 192(a) and (b).  (Opp. at 12-13.)  No matter how much Plaintiffs suggest otherwise, they cannot refute that the Fifth Circuit Court of Appeals' decision in *Wheeler v. Pilgrim's Pride Corporation* interpreting § 192(a) and (b) arose from an interlocutory appeal under § 1292(b), which the Fifth Circuit granted.  591 F.3d 355, 357 (5th Cir. 2009).  Accordingly, *Wheeler* establishes that the prerequisites for an interlocutory appeal are met here.

[8] Plaintiffs assert that, at most, they need only show a "likelihood of competitive injury" to plead a viable cause of action under PSA § 192(a) and (b) because "PPCs [sic] has monopsony power."  (Opp. at 11.) Plaintiffs are wrong.  As demonstrated in this Reply, the Complaint does not allege facts showing Pilgrim's is a monopsonist.  Moreover, Plaintiffs do not address the numerous legal authorities discussed in Pilgrim's opening papers demonstrating that the "likelihood" tine merely applies to claims seeking injunctive relief based on incipient violations.  (Mem. at 18 n. 12.)  Consequently, Plaintiffs must plead and prove actual harm to competition because they are seeking money damages based on Pilgrim's past acts.  (*Id.*)

case.  (*See generally* Opp. and Compl.)  Plaintiffs' omission is not surprising because, as Pilgrim's opening papers demonstrate, the Complaint is devoid of facts identifying what the relevant product is here or even the boundaries of the alleged market.  (*See* Mem. at 20.)

Next, to the extent Plaintiffs' Opposition acknowledges some of Pilgrim's arguments in its opening papers, such as Plaintiffs' failure to show Pilgrim's has "market power," Plaintiffs falsely argue they pleaded "PPC has a monopsony" and Pilgrim's monopsony power equates to a likelihood of competitive injury.  (*See* Opp. at 11.)  The problem for Plaintiffs, however, is the Complaint does not support Plaintiffs' representation.   In fact, the words "monopsony," "monopsonist," or any derivative thereof, do not appear in the Complaint.  (*See generally* Compl.) And the Complaint does not include facts showing Pilgrim's is a monopsonist or has monopsony power.  Further, Plaintiffs' unsupported argument is specious because the Court previously entered findings of fact and conclusions of law after a bench trial determining Pilgrim's is <u>*not*</u> a monopsonist in West Virginia and the presence of "as many as eight different potential buyers for grower services" "serve as an economic constraint on any potential anticompetitive behavior on behalf of integrators generally, and the Pilgrim's Complex specifically."  *See M&M Poultry, Inc. v. Pilgrim's Pride Corp.*, 281 F. Supp. 3d 610, 618-19 (N.D. W.Va. 2017).

Next, Plaintiffs also accuse Pilgrim's of being an "oligopsony."  (Opp. at 11.)  But as Pilgrim's demonstrated in its opening papers, the Complaint's reference to Pilgrim's having "oligopsony power" (Compl. ¶ 18) is insufficient because the allegation constitutes a mere naked assertion devoid of factual enhancement.  (Mem. 20.)  In their Opposition, Plaintiffs do not refute Pilgrim's argument.  (*See* Opp. at 10-12.)

Nevertheless, even if this conclusory allegation is deemed sufficient, which it is not, Plaintiffs' Opposition fails to address Pilgrim's argument in its opening brief demonstrating the

Complaint's failure to explain how Pilgrim's harmed competition based on its unilateral conduct. (*Compare* Mem. at 20-21 *with* Opp. at 21.)

For all these reasons, the Plaintiffs' PSA § 192(a) and (b) claims should be dismissed.[9]

### 3.    The Court should dismiss Pilgrim's PSA claims regardless whether the Court revisits its prior opinion in *M&M Poultry*.

The Court should dismiss with prejudice Plaintiffs' PSA claims as pleaded in the Complaint (*see* Compl. ¶¶ 69-74) because Plaintiffs never address how Pilgrim's could violate subsections (a) and (b) by accepting Triple R's decision to terminate the 2012 BPA and waiving Pilgrim's own right to 90 days' notice before the termination became effective. (*Compare* Mem. at 21 *with* Opp. at 21.)

Further, as discussed in § II.A above, Plaintiffs concede the release in the 2012 BPA precludes the PSA claims to the extent they are based on Pilgrim's alleged retaliatory conduct before March 16, 2012. (Opp. at 19 n. 4.)

Third, the remainder of Plaintiffs' PSA claim is time-barred. Under the PSA, the four-year limitations period commences on the date the cause of action accrues, that being, the date on which the wrongdoer commits an act injuring the business of another. *Varner v. Peterson Farms,* 371 F.3d 1011, 1019 (8th Cir. 2004) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)). Here, Plaintiffs do not dispute the Complaint alleges facts showing Pilgrim's alleged retaliatory conduct occurred before October 25, 2014 (e.g., delivering substandard inputs, withholding needed medication, and inaccurately weighing the flocks), and that conduct allegedly impacted Triple R immediately in the form of reduced settlement payments; thus, each act accrued

---

[9] Dismissing Plaintiffs' PSA claims with prejudice is appropriate because Plaintiffs' legal team is well aware of Pilgrim's position that harm to competition must be pleaded under PSA § 192(a) and (b) and Plaintiffs have neither sought leave to amend the complaint nor requested leave to amend should the Court agree with Pilgrim's and dismiss the PSA claims.

18

on the date of the occurrence.  (*See* Compl. ¶ 69 (alleging Plaintiff Hedrick spoke at a USDOJ meeting in 2010 and afterwards "*settlements started going down drastically.  Triple R began losing anywhere from $17K to $30K a flock.*") (emphasis added).)

In an attempt to circumvent the limitations bar, Plaintiffs rely on the continuing violation doctrine, which allows a claim "'to accrue whenever the wrongdoer commits an overt act in furtherance of an antitrust conspiracy or, in the absence thereof, commits an act that by its very nature is a continuing antitrust violation." *Varner*, 371 F.3d at 1019 (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982)); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290-91 (4th Cir. 2007).  "When a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." *Barnosky Oils, Inc. v. Union Oil Co. of Calif.*, 665 F.2d 74, 81 (6th Cir. 1981).  However, "'even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.'"  *Pace Indus, Inc. v. Three Phoenix Co.,* 813 F.2d 234, 237 (9th Cir. 1987).

To adequately plead an overt act, Plaintiffs must satisfy two requirements:  (1) there must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) the new overt act must inflict new and accumulating injury on Plaintiffs. *Varner*, 371 F.3d at 1019 (citing *Pace Indus., Inc.*, 813 F.2d at 238).  "Acts that are merely 'unabated inertial consequences' of a single act do not restart the statute of limitations. *Id.*

Here, the Complaint did not include a "continuing violations" claim.  (*See generally* Compl.)  Moreover, Plaintiffs fail to plead a plausible overt act in furtherance of the PSA violation occurring after October 25, 2014.  Indeed, the only post-October 25, 2014 events Plaintiffs rely on are (1) Pilgrim's alleged submission of a "deceptive document titled 'Estimated Cash Flow'" to

Mr. Hedrick in February 2016 and (2) the false allegation that Pilgrim's terminated the 2012 BPA. (*See* Opp. at 26-27.)  However, neither event constitutes an overt act for purposes of the PSA claim.  First, and most importantly, Plaintiffs do not rely on the submission of the cash flow projection as the basis for their PSA claims alleged in Count I of the Complaint.  (*See* Compl. ¶¶ 69-75.)  Second, Plaintiffs do not allege Mr. Hedrick's receipt of the "Estimated Cash Flow" caused Plaintiffs harm, let alone inflicted a new and accumulating injury on Plaintiffs as required to constitute an overt act.[10]  (*See* Compl ¶¶ 48-52.)  Finally, Exhibit B affixed to Pilgrim's Motion to Dismiss shows Triple R terminated the 2012 BPA on October 3, 2016, and instructed Pilgrim's not to deliver any further poultry to the farm.  Thus, Triple R, not Pilgrim's, concluded the parties' contractual arrangement and any resulting harm was caused by Plaintiffs.

Because the Complaint neither includes a continuing violation claim nor pleads a plausible overt act necessary to activate the continuing violations doctrine, the Court should dismiss Plaintiffs' subsection (a) and (b) claims.  Indeed, even the legal authority cited in Plaintiffs' Opposition supports this result.  (*See* Opp. at 21 (citing *Varner*, which affirmed the district court's determination that the plaintiffs' failed to plead sufficient facts to support the tolling of the PSA's four-year limitations period based on the continuing violations doctrine).)

### III.    CONCLUSION

For all the reasons discussed in Pilgrim's opening papers and this Reply, Pilgrim's requests the Court to dismiss with prejudice each and every cause of action alleged in Plaintiffs' Complaint. Indeed, based on the Complaint's allegations, the arguments in Plaintiffs' Opposition, and the extrinsic evidence the Court is permitted to consider, any attempt to amend the Complaint would be futile.

---

[10] In fact, Plaintiffs do not claim they relied, let alone detrimentally relied, on the forecast.  (*See id.* 49-52.)

Dated:  March 22, 2019.

Respectfully submitted,

/s/ *Peter G. Zurbuch*
Peter G. Zurbuch
WV State Bar # 5765
BUSCH, ZURBUCH & THOMPSON, PLLC
P.O. Box 1819
Elkins, WV 26241
Tel: (304) 636-3560
Fax: (304) 636-2290
Email: pzurbuch@bztlaw.com

—And—

Clayton E. Bailey
(Admitted *Pro Hac Vice*)
Benjamin L. Stewart
(Admitted *Pro Hac Vice*)
BAILEY BRAUER PLLC
Campbell Centre I
8350 N. Central Expressway, Suite 206
Dallas, Texas 75206
Tel: (214) 360-7433
Fax: (214) 360-7435
Email: cbailey@baileybrauer.com
         bstewart@baileybrauer.com

**ATTORNEYS FOR DEFENDANT
PILGRIM'S PRIDE CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with LR Gen P 5.06(b) on March 22, 2019.  As such, this document was served on all counsel of record who are deemed to have consented to electronic service as follows:

Jack A. Kolar, Esq.                          J. Dudley Butler, Esq.
Karen J. Gray, Esq.                         Butler Farm & Ranch Law Group, PLLC
Amanda Hitt, Esq.                           499-A Breakwater Drive
Government Accountability Project, Inc.   Benton, MS 39039
1612 K Street, NW
Suite 1100
Washington, D.C. 20006

Keith Lively, Esq.
Doyle, Barlow & Mazard PLLC
1010 Temple Street
Hinton, WV 25951

*/s/ Peter G. Zurbuch*

22